No. 81–2406. CITY OF POLSON, MONTANA *v.* CONFEDERATED SALISH AND KOOTENAI TRIBES OF THE FLATHEAD RESERVATION, MONTANA, ET AL.; and

No. 82–22. NAMEN ET AL. *v.* CONFEDERATED SALISH AND KOOTENAI TRIBES OF THE FLATHEAD RESERVATION, MONTANA, ET AL. C. A. 9th Cir. Certiorari denied. Reported below: 665 F. 2d 951.

JUSTICE REHNQUIST, with whom JUSTICE WHITE joins, dissenting.

In deciding these cases, the Court of Appeals for the Ninth Circuit held that (1) the historic Flathead Reservation was not terminated by an Act of Congress in 1904; (2) by virtue of the Treaty of Hell Gate the title to the bed and banks of the south half of Flathead Lake, a large inland lake in northwestern Montana, was retained by the United States as trustee for respondent Tribes, rather than passing to the State of Montana at the time the latter was admitted to the Union; and (3) respondent Tribes have the authority to regulate the riparian rights of non-Indian owners of land abutting Flathead Lake. In my opinion, the decision of the Court of Appeals with respect to the "termination" issue was based on principles derived from cases such as *Rosebud Sioux Tribe* v. *Kneip*, 430 U. S. 584 (1977), *DeCoteau* v. *District County Court*, 420 U. S. 425 (1975), and *Mattz* v. *Arnett*, 412 U. S. 481 (1973), and does not warrant review here. With respect to the "ownership" issue and the "regulatory" issue, as they were described by the Court of Appeals, however, I believe there is reason to think that the Court of Appeals incorrectly applied our decisions in *Montana* v. *United States*, 450 U. S. 544 (1981), *Oliphant* v. *Suquamish Indian Tribe*, 435 U. S. 191 (1978), and *United States* v. *Wheeler*, 435 U. S. 313 (1978), and I would grant certiorari to review these determinations.

*The "ownership" issue.*   This requires deciding who owns the southern half of the bed and banks of Flathead Lake. The Court of Appeals relied on its own decision 40 years ago in *Montana Power Co.* v. *Rochester,* 127 F. 2d 189 (1942). Petitioners contended in the Court of Appeals that *Rochester* had been significantly undercut by our decision in *Montana* v. *United States, supra,* where we held that the treaty establishing the Crow Indian Reservation had not conveyed to the Indians beneficial ownership of the bed of the Big Horn River flowing through the Reservation.   The Court of Appeals advanced several factual distinctions between the execution of the treaty in *Montana* and the execution of the Treaty of Hell Gate involved in these cases.   But the Court of Appeals apparently also disagreed with a portion of this Court's reasoning in *Montana.*   In its opinion, the Court of Appeals stated:

> "The *Montana* Court emphasized that 'Congress was, of course, aware of this presumption once it was established by this Court.' [Citation omitted.]   There is no evidence, however, that the presumption against prestatehood federal grants of land under navigable waters had been established at the time the Hell Gate Treaty was negotiated and ratified.   The earliest statement of the presumption appeared seven decades later. . . ." 665 F. 2d 951, 961, n. 27 (1982).

While this may be a proper statement of the chronology, it would surely be as applicable to the Crow Treaty involved in *Montana* as to the Treaty of Hell Gate involved in this case.

It would appear that the Court of Appeals decision in *Rochester, supra,* was a dispute between a licensee under the Federal Power Commission which had built a dam at the outlet of Flathead Lake and a non-Indian owner of patented land.   But the *Rochester* court did not even purport to discuss the principle laid down in *United States* v. *Holt State Bank,* 270 U. S. 49 (1926), and reaffirmed in *Montana, supra,* that there is no conveyance of ownership where there

is nothing in a treaty "which even approaches a grant of rights in lands underlying navigable waters; nor anything evincing a purpose to depart from the established policy . . . of treating such lands as held for the benefit of the future State." *United States* v. *Holt State Bank, supra,* at 58–59, quoted in *Montana* v. *United States, supra,* at 552–553.

While it may be understandable why the Court of Appeals treated its decision in *Rochester* as *stare decisis* in these cases, the same is obviously not true so far as this Court is concerned. Because after *Montana* there is substantial doubt as to whether the Court of Appeals reached the right conclusion on the "ownership" issue, I would grant certiorari to review its judgment on that point.

*The "regulatory" issue.* The Court of Appeals also decided that a tribal ordinance regulating the riparian rights of owners of fee lands abutting Flathead Lake could be applied to non-Indian owners. The Court of Appeals saw, perhaps quite rightly, conflicting indications from our decisions in *Montana* v. *United States, supra, Oliphant* v. *Suquamish Indian Tribe, supra,* and *United States* v. *Wheeler, supra,* on the one hand, and *Washington* v. *Confederated Tribes of Colville Indian Reservation,* 447 U. S. 134 (1980), on the other hand.

In *Oliphant, supra,* we acknowledged that Indian tribes retain elements of "quasi-sovereign" authority after ceding their lands to the United States, but went on to observe:

> "The tribes' retained powers are not such that they are limited only by specific restrictions in treaties or congressional enactments. As the Court of Appeals recognized, Indian tribes are prohibited from exercising both those powers of autonomous states that are expressly terminated by Congress *and* those powers '*inconsistent with their status.*'" 435 U. S., at 208.

In *Wheeler, supra,* we further observed that "[t]he areas in which such implicit divestiture of sovereignty has been held to have occured are those involving the relations between an

Indian tribe and nonmembers of the tribe." 435 U. S.,
at 326.

The Court of Appeals saw an inconsistency between these
statements and the statement contained in *Washington* v.
*Confederated Tribes, supra,* that "[t]ribal powers are not im-
plicitly divested by virtue of the tribe's dependent status."
447 U. S., at 153. But the Court of Appeals also recognized
that the most recently decided of these cases, *Montana* v.
*United States, supra,* cited *Wheeler* with complete approval.
In *Montana,* we went on to say:

> "Thus, in addition to the power to punish tribal offend-
> ers, the Indian tribes retain their inherent power to
> determine tribal membership, to regulate domestic rela-
> tions among members, and to prescribe rules of inheri-
> tance for members. [Citation omitted.] But exercise
> of tribal power beyond what is necessary to protect
> tribal self-government or to control internal relations is
> inconsistent with the dependent status of the tribes, and
> so cannot survive without express congressional delega-
> tion. [Citations omitted.] Since regulation of hunting
> and fishing by nonmembers of a tribe on lands no longer
> owned by the tribe bears no clear relationship to tribal
> self-government or internal relations, the general princi-
> ples of retained inherent sovereignty did not authorize
> the Crow Tribe to adopt Resolution No. 74–05." 450
> U. S., at 564–565 (footnote omitted).

Nevertheless, the Court of Appeals felt that even under
the more recently expressed doctrines reaffirmed in *Mon-
tana,* the ordinance regulating non-Indian lands abutting
Flathead Lake was authorized because the southern half of
the lake, in its view, was owned by the United States in trust
for the Tribes. The correctness of that conclusion obviously
depends upon the Court of Appeals' resolution of the "owner-
ship" issue; if upon review of this latter determination we
were to decide that the southern half of Flathead Lake

passed to the State of Montana under our decision in *Montana* v. *United States*, the Court of Appeals' justification for its decision of the "regulatory" issue would likewise fail.

The "ownership" and "regulatory" issues present important questions having ramifications throughout the many Western States within the jurisdiction of the Court of Appeals for the Ninth Circuit. I would grant certiorari to review that court's decision of both issues.