STATE OF CONNECTICUT *v.* JOSEPH MARINO
(9499)

PETERS, HEALEY, SHEA, GRILLO and CIOFFI, Js.

Argued April 5—decision released July 12, 1983

*Richard Emanuel,* assistant public defender, with whom, on the brief, was *Jerrold H. Barnett,* public defender, for the appellant (defendant).

*John M. Massameno,* assistant state's attorney, with whom were *Catherine J. Capuano,* special assistant state's attorney, and, on the brief, *Richard E. Maloney,* deputy chief state's attorney, and *Francis M. McDonald,* state's attorney, and *Katherine J. Lambert,* deputy assistant state's attorney, for the appellee (state).

SHEA, J. After a trial by a three judge court pursuant to General Statutes § 53a-45 (b), the defendant was found guilty of manslaughter in the first degree with a firearm in violation of General Statutes § 53a-55a as a lesser offense included in the murder indictment which the grand jury had returned. In his appeal from the judgment the defendant has raised four claims of error: (1) that his waiver of a jury trial was not made knowingly, intelligently and voluntarily; (2) that the evidence was insufficient to establish his guilt beyond a reasonable doubt; (3) that there was an insufficient evidentiary basis for the court to consider manslaughter

in the first degree with a firearm as an offense included in the indictment; and (4) that his statements to the police after the shooting were the product of an unlawful seizure of his person and, therefore, should not have been admitted in evidence.

## I

The circumstances surrounding the defendant's waiver of his right to a jury trial were as follows:

On April 25, 1978, a grand jury returned an indictment charging the defendant with murder. The clerk then read the indictment to the defendant who entered a plea of not guilty. The clerk then inquired whether he elected trial by court or jury. His counsel requested trial by a three judge court and it was so ordered. The state's attorney suggested that the court question the defendant himself concerning his election. The court then inquired, "[y]ou are seeking a trial by a three judge court. I presume, Mr. Marino, that you do understand that this means your trial will be had before a court and not before a jury and that that court will consist of three judges; do you understand?" The defendant responded affirmatively to this question and to a further inquiry as to whether it was his free and voluntary choice.[1]

In support of the claim that his waiver of a jury trial was neither knowing, intelligent, nor voluntary, the defendant points mainly to two deficiencies in the pro-

---

[1] This entire colloquy was as follows:

"The Clerk: Again, please, listen to the reading of the indictment as returned to this day, the Grand Jurors within aforesaid County of New Haven accuse Joseph Marino of Waterbury in said County of the crime of Murder, charged that at the Town of Waterbury in said County on or about the 10th day of February, 1978, the said Joseph Marino did intentionally cause the death of Deborah Brown by shooting her with a pistol, violation

ceedings related thereto: (1) that he was never told of his entitlement to a jury of twelve[2] whose verdict had to be unanimous; and (2) that he was never informed that a decision by a three judge court could be reached by a simple majority, although the three judges who found him guilty in this case were actually unanimous.

Although the claim of an ineffective jury trial waiver is being raised for the first time on appeal, it is unquestionable that this issue involves a fundamental constitutional right guaranteed by the sixth amendment and that we must review the record to determine whether it clearly indicates that the defendant has been deprived of that right illegally. *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973). It should be noted that the defendant makes no claim that the procedures set forth

---

of Section 53a-54a, of the Connecticut General Statutes; to this charge what is your plea, guilty or not guilty?

"The Accused: Not guilty.

"The Clerk: Do you elect a trial by court or by jury?

"Mr. Weinstein [Defense Counsel]: By a three judge court, your Honor.

"The Court: Three judge court, may be so assigned.

"Mr. Hill [Ass't. State's Atty.]: Your Honor, I would ask your Honor to inquire of the defendant for that election.

"The Court: I beg your pardon?

"Mr. Hill: I would ask your Honor to inquire of the defendant himself for that election.

"The Court: You are seeking a trial by a three judge court. I presume, Mr. Marino, that you do understand that this means that your trial will be had before a court and not before a jury and that that court will consist of three judges; do you so understand?

"The Accused (Mr. Marino): Yes, sir.

"The Court: And, is this your free and voluntary choice?

"The Accused (Mr. Marino): Yes, sir.

"The Court: Record may so reflect."

[2] The defendant was entitled to be tried by a jury of twelve rather than six because he was charged with murder in violation of General Statutes § 53a-54a, an offense punishable under General Statutes § 53a-35 by life imprisonment. General Statutes § 54-82; Public Acts 1977, No. 77-474, § 1.

in Practice Book § 839[3] and General Statutes § 54-82b[4] concerning waiver of a jury trial were not followed. A mere deviation from these prescribed procedures, of course, would not in itself constitute a claim of constitutional error eligible for appellate review sufficient to overcome our general prohibition against raising on appeal issues never presented to the trial court. *State* v. *Shockley,* 188 Conn. 697, 713, 453 A.2d 441 (1982); see Practice Book § 3063.

The right to a jury trial in a criminal case is among those constitutional rights which are related to the procedure for the determination of guilt or innocence. The standard for an effective waiver of such a right is that it must be "knowing and intelligent," as well as voluntary. *Schneckloth* v. *Bustamonte,* 412 U.S. 218, 237, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973); *Patton* v. *United States,* 281 U.S. 276, 312, 50 S. Ct. 253, 74 L. Ed. 854 (1930). The issue before us, however, is not in full measure whether the defendant acted knowingly and intelligently in waiving a jury trial, as in cases where an evidentiary hearing upon that subject has been held. See *Ciummei* v. *Commonwealth,* 378 Mass. 504, 511–14,

---

[3] "[Practice Book] Sec. 839. ——RIGHT TO JURY TRIAL AND WAIVER

The defendant in a criminal action may demand a trial by jury of issues which are triable of right by jury. If at the time he is put to plea, he elects a trial by the court, the judicial authority shall advise the defendant of his right to a trial by jury. If the defendant does not then elect a jury trial, his right thereto may be deemed to have been waived."

[4] "[General Statutes] Sec. 54-82b. RIGHT TO TRIAL BY JURY. (a) Any party to a criminal action in the superior court may demand a trial by jury of issues which are triable of right by a jury. There is no right to trial by jury in criminal actions where the maximum penalty is a fine of ninety-nine dollars or a sentence of thirty days, or both.

"(b) In criminal proceedings the judge shall advise the accused of his right to trial by jury at the time he is put to plea and, if the accused does not then claim a jury, his right thereto shall be deemed waived, but if a judge acting on motion made by the accused within ten days after judgment finds that such waiver was made when the accused was not fully cognizant of his rights or when, in the opinion of the judge, the proper administration of justice requires it, the judge shall vacate the judgment and cause the proceeding to be set for jury trial.

"(c) In any criminal trial by a jury, except as otherwise provided by law, such trial shall be by a jury of six."

392 N.E.2d 1186 (1979). We must decide whether the bare appellate record before us furnishes sufficient assurance of an effective waiver at least to satisfy constitutional requirements for the disclosure of such a waiver on the record.

Insofar as the right to a jury trial is based upon the federal constitution, it is appropriate to examine the procedure prescribed for an effective jury trial waiver by the federal rules of criminal procedure. Rule 23 (a) provides: "Cases required to be tried by jury shall be so tried unless the defendant waives a jury trial in writing with the approval of the court and the consent of the government." The only record of the waiver required by most of the federal courts is the executed document itself. *United States* v. *Tobias,* 662 F.2d 381, 387 (5th Cir. 1981). Although personal interrogation of the defendant to determine his understanding of the significance of his execution of the waiver form is the better practice, it is not essential under either the rule or the federal constitution. *United States* v. *Scott,* 583 F.2d 362, 363 (7th Cir. 1978); *United States* v. *Kidding,* 560 F.2d 1303, 1311–12 (7th Cir.), cert. denied sub nom. *Brown* v. *United States,* 434 U.S. 872, 98 S. Ct. 217, 54 L. Ed. 2d 151 (1977); *Estrada* v. *United States,* 457 F.2d 255, 257 (7th Cir. 1972); *United States* v. *Mitchell,* 427 F.2d 1280, 1281 (3d Cir. 1970); *United States* v. *Straite,* 425 F.2d 594, 595 (D.C. Cir. 1970); *United States* v. *Hunt,* 413 F.2d 983, 984 (4th Cir. 1969). The court of appeals for the seventh circuit, however, has adopted prospectively a supervisory rule prescribing a detailed jury waiver formula.[5] *United States* v. *Delgado,* 635 F.2d 889, 890

---

[5] "We take this opportunity to advise the trial courts that they should explain that a jury is composed of twelve members of the community, that the defendant may participate in the selection of jurors, and that the verdict of the jury is unanimous. The court should inform the defendant that if he waives a jury, the judge alone will decide guilt or innocence. After informing the defendant of these factors, the trial court should then ascer-

(7th Cir. 1981); *United States* v. *Scott,* supra, 364. Similar jury waiver inquiries have been established prospectively by the courts of Massachusetts and Pennsylvania. *Ciummei* v. *Commonwealth,* supra, 509–11; *Commonwealth* v. *Morin,* 477 Pa. 80, 84–85, 383 A.2d 832 (1978). Desirable as these reforms may be, we are not inclined to adopt them retroactively.

Both General Statutes § 54-82b (b)[6] and Practice Book § 839[7] require that the judge advise the defendant at the time he pleads of his right to a trial by jury. We have indicated that a literal compliance with these provisions is not essential "if the record affirmatively discloses that the defendant intelligently and knowingly did waive his right to trial by jury." *State* v. *Shockley,* 188 Conn. 697, 711, 453 A.2d 441 (1982). Neither the statute nor the rule specifies the precise content of the advice to be given a defendant who seeks a non-jury trial. The colloquy with the court in this case does establish that, with counsel present, this defendant voluntarily chose to be tried by a three judge court rather than a jury. The federal standard for jury waiver set forth in Federal Rule 23 (a), which has frequently been held constitutionally adequate, accomplishes nothing more by way of assurance of a knowing and intelligent waiver on the part of a defendant. It is not unreasonable to infer such a waiver from the free expression by a defendant of his election of a non-jury trial especially where he is represented by counsel. See *Adams* v. *United States ex rel. McCann,* 317 U.S. 269, 63 S. Ct. 236, 87 L. Ed. 268 (1942) (an accused, without counsel by his own election, may voluntarily waive right

---

tain whether the defendant wishes to waive his right to a jury trial. Only after this type of inquiry will the court be able to determine that the defendant understands his right to a jury trial and the consequences of waiver." *United States* v. *Delgado,* 635 F.2d 889, 890 (7th Cir. 1981).

[6] See footnote 4, supra.

[7] See footnote 3, supra.

to jury if capable of determining his own best interest). We, therefore, find no violation of the defendant's federal constitutional right to a jury trial. We also see no reason to demand as a constitutional necessity a more elaborate procedure for an effective waiver of the right of jury trial as guaranteed by our state constitution. Conn. Const., art. I § 19.

We must emphasize the limited nature of our holding in this case. Undoubtedly a more comprehensive colloquy than this record discloses is generally desirable where a defendant elects trial without a jury. See *United States* v. *Delgado,* supra, 890. Our concern on this appeal, however, is only with the adequacy of the record to show a waiver of a jury trial when its effectiveness is first questioned on appeal without the benefit of a factual exploration of that issue at some evidentiary proceeding. There is nothing before us to indicate that the defendant was not of ordinary intelligence and educational background and that the choice of court or jury was not fully discussed with him by his counsel. We cannot assume that in performing his duty of competent representation his counsel did not advise the defendant of the consequences of his choice, even to the extent of the refinements the defendant now demands.[8] We hold that the record in this case satisfies the constitutional requirement for an affirmative disclosure of an effective jury waiver which may be relied upon in the absence of some contrary indication.

---

[8] In *State* v. *Childree,* 189 Conn. 114, 124, 454 A.2d 1274 (1983), in deciding whether the record adequately supported the acceptance of a guilty plea, we refused to indulge in the assumption that counsel had properly explained a critical element of an offense which the trial court had failed to clarify. Our rules of practice prescribe a detailed procedure for acceptance of a guilty plea far more elaborate than the rudimentary requirements of Practice Book § 839 and General Statutes § 54-82b, that a judge "advise" the defendant of his right to trial by jury. Practice Book §§ 712–713. Where the record fails to disclose substantial compliance with this procedure, to cure the omis-

## II

A recital of the facts which the panel might reasonably have found is necessary for consideration of the claim of the defendant that there was insufficient evidence to sustain his conviction of manslaughter in the first degree with a firearm.

On February 10, 1978, at about 1:30 p.m., the police responded to a report of a shooting at 41 Cooke Street in Waterbury. Officer Charles Muccino and two paramedics ran upstairs to the third floor apartment occupied by the defendant and the victim. The door was open and they found the defendant standing in the kitchen doorway. He looked nervous and upset and he told the police that his girl friend had been shot and was lying on the floor of the bedroom. He said they had been arguing when the victim, thinking the gun was unloaded, had picked it up and shot herself. He then had picked up the gun and had placed it on the bureau.

In the bedroom the victim was lying on her back on the floor dressed in a nightgown and was bleeding from a gunshot wound to the right temple. After administering first aid, the medical attendants removed the victim to a hospital, where she died in the emergency room at 2:55 p.m.

The defendant remained at the apartment and talked spontaneously to the officers. He said that the victim

---

sion by resorting to a presumption that counsel has performed a duty of the court would be inconsistent with the principle that the necessary elements for an effective guilty plea must appear in the record. *Boykin* v. *Alabama,* 395 U.S. 238, 242, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969); *State* v. *Childree,* supra, 120.

Since the record in this case shows no deficiency in the prescribed procedure for an effective waiver of a jury trial, we may resort to the presumption that the election of a trial by a panel of three judges was adequately discussed with the defendant by his counsel. See *Henderson* v. *Morgan,* 426 U.S. 637, 647, 96 S. Ct. 2253, 49 L. Ed. 2d 108 (1976).

was his fiancee and that they had lived together in the apartment for the past year. He did not reveal the subject of their argument. He said they were both on the bed when the victim stood up, picked up the gun which was lying on the bureau and, not realizing it was loaded, shot herself. He admitted that he owned the gun but said that he had not realized that it was loaded. He said he was sitting on the bed when it was discharged.

After the defendant was taken to the police station he was questioned further. He said that after the victim fell to the floor and he placed the gun, which he had picked up, back on the bureau, he telephoned the police. He also related that he and the victim had been arguing about her plan to take a skiing trip to Vermont for the weekend with some of her co-workers at the Southbury Training School and that she had said, "[i]f you don't let me go then I will kill myself." She then reached over to the bureau from the bed, picked up the gun, pointed it toward her head and pulled the trigger. During this interrogation the defendant said he had been standing in the doorway of the bedroom and that the victim was lying in bed as the argument took place. He said that he was getting dressed when the incident occurred.

At the trial the state presented the opinion of a medical examiner that the muzzle of the gun was at least six inches and probably eight to twelve inches distant from the skin surface when the shot was fired. This expert witness testified that such a muzzle distance made it unlikely that the temple wound of the victim was self-inflicted because of the difficulty in holding a gun in the normal fashion at the position necessary to cause such a wound.

A ballistics expert testified that the muzzle of the gun was ten to twelve inches away from the head of the

victim when it was fired, a highly improbable position for a self-inflicted wound to the temple. He also concluded from an examination of the gun that someone had wiped fingerprints from the gun after it was fired. An examination he made of the victim's hands for traces of chemicals which would indicate whether she had recently fired a gun was inconclusive.

The defendant testified at the trial generally in accord with his prior statements. He said that he and the victim were planning to marry in September. He said he had bought the gun several months before the incident and kept it in the apartment for protection. He had cleaned the gun about one week before the incident and he had shown the victim how to load and unload the gun. After unloading the gun he had left it on the bureau with six bullets and did not handle it again until after he had picked it up from the floor after the shooting. He said he did not know who had loaded the gun with the single round it was found to contain when the police examined it.

The defendant testified that on the night of the shooting they had been arguing about the victim's intended ski trip to Vermont and that she was "getting pretty mad." He got off the bed, where both of them had been lying. He said he was leaving and started to dress. He heard the victim get off the bed, walk on the floor, and say, "[i]f I can't go, I can always shoot myself." At that time the defendant was putting on his shirt and his back was toward the victim. He started to turn around when he heard the gun discharge. He saw the victim lying on the floor and also noticed the gun on the floor, which he then picked up and placed on the bureau to get it away from her. He called an ambulance and the police. The defendant never actually

saw the victim holding the gun or falling. He denied wiping the gun or touching it after placing it on the bureau.

It is clear that, if the court could reasonably have accepted the testimony of the two expert witnesses that the wound to the victim's temple was not self-inflicted, a finding that the defendant had fired the fatal shot was justified. The defendant suggests no reason why the trier could not reasonably have believed these witnesses or disbelieved his own testimony.

The defendant's claim of evidentiary insufficiency is also based upon the failure of the three judge panel to specify under which subsection of General Statutes § 53a-55 (a)[9] the defendant was found to have commited manslaughter in the first degree with a firearm in violation of General Statutes § 53a-55a.[10] Where a person

---

[9] "[General Statutes] Sec. 53a-55. MANSLAUGHTER IN THE FIRST DEGREE: CLASS B FELONY. (a) A person is guilty of manslaughter in the first degree when: (1) With intent to cause serious physical injury to another person, he causes the death of such person or of a third person; or (2) with intent to cause the death of another person, he causes the death of such person or of a third person under circumstances which do not constitute murder because he acts under the influence of extreme emotional disturbance, as provided in subsection (a) of section 53a-54a, except that the fact that homicide was committed under the influence of extreme emotional disturbance constitutes a mitigating circumstance reducing murder to manslaughter in the first degree and need not be proved in any prosecution initiated under this subsection; or (3) under circumstances evincing an extreme indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person."

[10] "[General Statutes] Sec. 53a-55a. MANSLAUGHTER IN THE FIRST DEGREE WITH A FIREARM: CLASS B FELONY: ONE YEAR NOT SUSPENDABLE. (a) A person is guilty of manslaughter in the first degree with a firearm when he commits manslaughter in the first degree as provided in section 53a-55, and in the commission of such offense he uses, or is armed with and threatens the use of or displays or represents by his words or conduct that he possesses a pistol, revolver, shotgun, machine gun, rifle or other firearm. No person shall be found guilty of manslaughter in the first degree and manslaughter in the first degree with a firearm upon the same transaction

may have been convicted under more than one statutory alternative, the judgment cannot be supported unless the evidence was sufficient to establish guilt under each statutory provision which the trier may have relied upon. *Leary* v. *United States,* 395 U.S. 6, 31–32, 89 S. Ct. 1532, 23 L. Ed. 2d 57 (1969); *Yates* v. *United States,* 354 U.S. 298, 312, 77 S. Ct. 1064, 1 L. Ed. 2d 1356 (1957).

Although we might well invoke our power under Practice Book § 3060D to remand the case for a further articulation of the basis of the decision; see *State* v. *Ostroski,* 184 Conn. 455, 440 A.2d 166 (1981); it is unnecessary to do so because we find the evidence sufficient for a conviction under each of the three subsections of § 53a-55 (a). The first alternative, that the defendant caused the death of the victim but intended only to cause her serious physical injury, is reasonably supported by the circumstances of the shooting. Nothing in the evidence compelled the panel to conclude that he intended her death. Even if an intentional killing were found, the evidence of the relationship of the defendant to the victim, the quarrel which preceded the shooting and his distraught appearance at the time the police arrived indicate that he may have been acting under the influence of an extreme emotional disturbance. We cannot say that the evidence was legally insufficient to establish that affirmative defense, as required by the second subsection of § 53a-55 (a) to reduce murder to manslaughter in the first degree.[11] See *State* v. *Elliott,* 177 Conn. 1, 7–10,

---

but such person may be charged and prosecuted for both such offenses upon the same information.

"(b) Manslaughter in the first degree with a firearm is a class B felony for which one year of the sentence imposed may not be suspended or reduced by the court."

[11] Although extreme emotional disturbance is an affirmative defense, it requires no special plea, notice or other formal assertion by a defendant. The fact that this defendant offered no testimony of psychiatrists or others

411 A.2d 3 (1979); *People* v. *Patterson,* 39 N.Y.2d 288, 302, 347 N.E.2d 898 (1976). With respect to the third subsection, which requires reckless conduct creating a grave risk of death engaged in under circumstances evincing an extreme indifference to human life, the evidence also adequately supports such a finding by the panel. If the defendant intended neither the death nor the serious physical injury of the victim, as the panel may have concluded, his act of shooting her may have resulted from a reckless attempt to frighten her by firing the gun in her direction without specifically intending to injure her. See *State* v. *Giguere,* 184 Conn. 400, 403–404, 439 A.2d 1040 (1981); *State* v. *Maselli,* 182 Conn. 66, 73, 437 A.2d 836 (1980), cert. denied, 449 U.S. 1083, 101 S. Ct. 868, 66 L. Ed. 2d 807 (1981). The evidence as to the specific mental state of the defendant at the time of the offense was not so conclusive that any of the three alternatives of § 53a-55 (a) was precluded from consideration as a matter of law.

### III

The defendant also makes a related claim that the criteria necessary to warrant consideration of manslaughter in the first degree with a firearm as a lesser offense included in the murder charge were not satisfied. Although the defendant was convicted upon a trial to the court, we agree that the principles we have delineated for submission of lesser included offenses

---

in support of this defense but testified only that he had not shot the victim did not preclude the trial court from weighing its applicability. "The court or jury before which any person indicted for murder is tried may find him guilty of homicide in a lesser degree than that charged." General Statutes § 53a-45 (c). Whether a lesser degree of homicide is to be considered depends primarily on the evidence, including such evidence supporting an affirmative defense as may have come into the case. See *State* v. *Rodriguez,* 180 Conn. 382, 407, 429 A.2d 919 (1980); *State* v. *Whistnant,* 179 Conn. 576, 588, 427 A.2d 414 (1980).

to a jury are applicable generally. *State* v. *Brown,* 163 Conn. 52, 60–63, 301 A.2d 547 (1972). The trier may not find a defendant guilty of a lesser offense unless (1) it is not possible to commit the greater offense, in the manner described in the charging documents, without having first committed the lesser; (2) there is sufficient evidence in the case to support a conviction of the lesser offense; and (3) the proof on the element or elements which differentiate the lesser offense from the offense charged is sufficiently in dispute to warrant finding the defendant innocent of the greater offense but guilty of the lesser. See *State* v. *Whistnant,* 179 Conn. 576, 588, 427 A.2d 414 (1980). In respect to the first requirement, the defendant concedes that murder as charged in the indictment and bill of particulars, which alleged an intentional shooting of the victim with a pistol, would include as a lesser offense manslaughter in the first degree with a firearm in violation of General Statutes § 53a-55a. See *State* v. *Maselli,* supra, 71; *State* v. *Rodriguez,* 180 Conn. 382, 429 A.2d 919 (1980). Our discussion of his claim of insufficiency of the evidence to support his conviction of that offense has resolved the second criterion against him. The third element, some dispute in the evidence concerning the mental state which differentiates murder from manslaughter, was also satisfied. The circumstances involve a petty quarrel between paramours which resulted in a tragic killing followed by the apparently genuine grief of the one found to be the perpetrator of the crime. In such a situation it cannot be said that the evidence pointed only in the direction of murder. Mental state is an elusive concept seldom capable of proof with such certainty that reasonable persons cannot reach different conclusions as to the precise gradation of culpability involved. We find no error in the consideration by the panel of the lesser offense of manslaughter in the first degree with a firearm.

## IV

The remaining claim of error made by the defendant is that his statements made to the police after he was taken from his apartment and driven to the police station, to which no objection was voiced at trial, were inadmissible because they resulted from an unlawful seizure of his person without an arrest warrant. See *Dunaway* v. *New York,* 442 U.S. 200, 99 S. Ct. 2248, 60 L. Ed. 2d 824 (1979). Although *Dunaway,* which held inadmissible a confession which followed an arrest made without probable cause and involving transportation of the defendant to the police station for interrogation, was decided after the trial of this case, we have applied it retrospectively to cases pending on appeal. *State* v. *Ostroski,* 184 Conn. 455, 460, 440 A.2d 166 (1981); see also *State* v. *Ostroski,* 186 Conn. 287, 290, 440 A.2d 984, cert. denied, 459 U.S. 978, 103 S. Ct. 173, 74 L. Ed. 2d 142 (1982). *Dunaway* has been regarded, not as establishing a new and unforeseeable constitutional right to be accorded only prospective effect, but as merely applying settled precedents to new and different factual situations and, therefore, it must be applied retroactively. *United States* v. *Johnson,* 457 U.S. 537, 549, 102 S. Ct. 2579, 73 L. Ed. 2d 202 (1982); *United States* v. *Tucker,* 610 F.2d 1007, 1012 (2d Cir. 1979). We have, furthermore, indicated that the failure to raise unlawful seizure as a ground for objecting to statements elicited during a custodial interrogation does not preclude appellate review of such a claim. *State* v. *Ostroski,*[12] 184 Conn.

[12] In *State* v. *Ostroski,* 184 Conn. 455, 459, 440 A.2d 166 (1981), we referred to the defendant's argument that his *Dunaway* claim be "considered under the 'new constitutional right' branch of the exceptional circumstances doctrine of *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973)." Without specifying whether we were acting under that branch of the doctrine or under the alternative exception, "where the record adequately supports a claim that a litigant has been clearly deprived of a fundamental constitutional right and a fair trial"; id.; we did proceed to review the claim.

459–60, 440 A.2d 166 (1981); see also *State* v. *Ostroski,* 186 Conn. 287, 290, 440 A.2d 984, cert. denied, 459 U.S. 978, 103 S. Ct. 173, 74 L. Ed. 2d 142 (1982). The essential claim of the defendant is that the record demonstrates that he has "clearly been deprived of a fundamental constitutional right and a fair trial" by the admission of this evidence. *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973).

Without deciding whether there was probable cause for the seizure of the defendant, we find no merit in this claim of error because (1) it is probable that the evidence in question was allowed into the case by the defendant for strategic reasons; and (2) any possible error was harmless beyond a reasonable doubt.

The defendant claims that he was illegally seized at the point where detective Anthony Solomita suggested that he go down to the police station to get the matter "straightened out," and he and Solomita were taken to the station in a police car driven by detective James Gary. Prior to that time, the defendant had spoken to several police officers in the apartment concerning his version of the occurrence. He admitted that he and the victim had been arguing just before the shooting, but said he could not remember what the quarrel was about. His initial explanation of the incident was that the victim simply got up from the bed where both of them were lying, picked up the gun and, not realizing it was loaded, shot herself; and that he then picked up the gun and placed it back on the bureau.

We need not decide whether the bizarre nature of the occurrence as narrated by the defendant and his professed inability to remember the subject matter of the dispute a few minutes earlier which had provoked the victim to take her own life were sufficient to constitute probable cause. We are persuaded that the

defendant's statements to the police after he left the apartment were not particularly harmful to him and served to reinforce his own testimony at the trial. During this interrogation he gave a more detailed account of his original version of the event. He recalled that the argument was about the victim's intention to go skiing in Vermont for the weekend, to which he objected. The defendant was questioned by three officers in succession, each of whom gave a slightly different account of his responses. The variations related to where he was situated in the room at the moment the gun was discharged, the position of the victim at that time, whether on the bed or standing, and the precise words used by the victim just before she shot herself. Since the defendant did testify at his trial, if there were any inconsistencies between his testimony and his prior statements to the police, these were available for cross-examination as to his credibility regardless of whether they may have resulted from an illegal seizure. See *Harris* v. *New York,* 401 U.S. 222, 223–26, 91 S. Ct. 643, 28 L. Ed. 2d 1 (1971); *Walder* v. *United States,* 347 U.S. 62, 65, 74 S. Ct. 354, 98 L. Ed. 503 (1954). Counsel for the defendant undoubtedly was aware of this circumstance in advising him regarding his decision to testify. Letting the police give a full account of the defendant's statements made immediately after the incident served to dispel any notion that his testimony at the trial, which was generally consistent with his prior statements, had been contrived at some time after the arrest. It is reasonable to infer that the failure to raise any objection to the testimony concerning the interrogation of the defendant at the police station resulted from this trial strategy rather than from the inability of counsel to foresee the advent of *Dunaway* v. *New York,* supra.

Our conclusion that trial strategy dictated that the defendant's statements to the police be allowed to come into the case without objection also implies that he suf-

fered no detriment from the admission of this testimony. He points to none. As we have noted, his earlier statements were consistent with his trial testimony, except for minor details. His decision to take the stand was made with full awareness that he would be cross-examined about any inconsistencies. The possibility that he would have refused to testify at his trial if the statements elicited from him while he was in custody had not been admitted during the state's presentation is too remote to warrant serious consideration in view of their general consistency with his original account of the shooting. Taking the stand was probably a significant factor in causing the panel not to place the worst construction upon the evidence relating to the occurrence. Under the circumstances of this case, therefore, if we may properly characterize as "error" the admission of testimony to which no objection was raised, that error would be harmless beyond a reasonable doubt. See *Aillon* v. *State*, 168 Conn. 541, 548, 363 A.2d 49 (1975).

There is no error.

In this opinion the other judges concurred.