STATE OF CONNECTICUT *v.* EARL ARNOLD
(12619)
(12620)

HEALEY, SHEA, DANNEHY, CALLAHAN and MENT, Js.

Argued June 12—decision released August 26, 1986

*Alan D. McWhirter,* assistant public defender, with whom, on the brief, was *Raymond J. Quinn, Jr.,* public defender, for the appellant (defendant).

*Anthony M. Fitzgerald,* special assistant state's attorney, with whom were *Walter A. Scanlon,* chief assistant state's attorney, and, on the brief, *John A. Connelly,* state's attorney, for the appellee (state).

CALLAHAN, J. The defendant was charged in a three count substitute information with murder and felony murder, kidnapping in the first degree and the commission of a capital felony. In a separate substitute information he was charged with larceny in the first degree and robbery in the first degree. Both informations arose from the same incident and were tried together to a jury. The defendant was convicted of all five counts and sentenced by the trial court to an effective sentence of seventy years. See General Statutes § 53a-35b.[1] The defendant took separate appeals from his convictions on both substitute informations. He has, however, failed to brief any issue concerning his con-

[1] "[General Statutes] Sec. 53a-35b. 'LIFE IMPRISONMENT' DEFINED. A sentence of imprisonment for life shall mean a definite sentence of sixty years."

victions of larceny in the first degree and robbery in the first degree and that appeal is considered abandoned. *P. X. Restaurant, Inc.* v. *Windsor,* 189 Conn. 153, 162, 454 A.2d 1258 (1983); *O'Connor* v. *Dory Corporation,* 174 Conn. 65, 70, 381 A.2d 559 (1977).

All the charges stem from the abduction and subsequent death of Joanne DiChiara. DiChiara, a forty-four year old office manager, was last seen alive leaving the Westside Oyster Bar in downtown Waterbury, alone, at about 10:15 p.m. on August 17, 1983, after having had dinner. Her automobile, a 1980 Oldsmobile Cutlass, was found abandoned on Ward Street in Waterbury on August 23, 1983. Her naked, badly decomposed body was found in a wooded area near the Waterville section of Waterbury on August 26, 1983. An autopsy revealed that she had died of multiple stab wounds.

A police investigation of the crime led to the apprehension of the defendant on August 29, 1983. Between the date of the crime and his capture, the defendant told several acquaintances that he had killed the victim. On the day he was arrested, while in custody, the defendant gave three recorded statements to the police. In his first statement he admitted that he had participated in the robbery of the victim but said that he had only acted as a lookout and that a companion, Tyrone Dotson, had stabbed her. After Detective Peter Keegan, the police officer taking the statement, reminded the defendant that he had seen him in the downtown area several times the night of the crime and each time he was alone, the defendant repudiated the first statement. He then promised to tell the truth, and he gave a second written statement. In the second statement the defendant told Keegan that he had committed the crime alone, that he had needed money, and had followed the victim and accosted her as she entered her car. He stated he had a knife and had initially stabbed the victim in the neck unintentionally as they struggled while he

attempted to cut the strap of her pocketbook. He said he then pushed the victim over to the passenger seat, entered the car, drove to another area and had sexual relations with her. The victim lost consciousness and the defendant drove to the wooded area where the body was eventually found. There, he said, he "dragged her into the woods by her legs . . . [s]he was still breathing and I knew that she had seen my face and I stabbed her in the back a few times until she stopped breathing."

In a third, more extensive statement, transcribed by a court reporter and commenced approximately two and one-half hours after the second statement was concluded, the defendant told essentially the same story but said that when he pulled the victim into the woods he "didn't see her breathing or nothing like that" and "figured that she was already dead." He then said, however, "I figured she might be alive and she might not be alive," and that he stabbed her "two or three times."

At the trial the defendant testified that Dotson had stabbed the victim and that he had merely been the lookout for the robbery but that he had helped Dotson dispose of the body and had shared in the proceeds. The defense produced Dotson as a witness. He testified that he knew the defendant, having met him while they were both at Long Lane School several years before. He said that he had not seen him since that time, however, and that he had never in his life been in Waterbury prior to the date of his testimony. His appearance as a witness for the defense was understandably brief.

Wayne Carver, a pathologist and an assistant medical examiner, who performed the autopsy on the body of the victim, testified that the body had a total of twenty-four stab wounds in the neck, back and buttocks. In his opinion, the cause of the victim's death was multiple stab wounds to the trunk of her body.

Because the front portion of the victim's body was completely decomposed, Carver testified he was unable to determine whether she had been stabbed in that area. He also testified there was no medical evidence indicating whether the victim was alive or dead when the stab wounds to her back were inflicted.

## I

The initial count of the substitute information charged the defendant in the conjunctive with intentional murder[2] *and* felony murder.[3] At the conclusion of the evidence and after final arguments, the trial court instructed the jury that, if it found either or both alternatives proven beyond a reasonable doubt, the jury should find the defendant guilty of murder. The defendant requested the trial court to instruct the jury that if it found him guilty of murder to specify in the verdict whether it found him guilty of intentional murder or felony murder or both. See *State* v. *Duhan,* 194 Conn. 347, 354, 481 A.2d 48 (1984). The trial court

[2] "[General Statutes] Sec. 53a-54a. MURDER DEFINED. AFFIRMATIVE DEFENSES. EVIDENCE OF MENTAL CONDITION. CLASSIFICATION. (a) A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes a suicide by force, duress or deception; except that in any prosecution under this subsection, it shall be an affirmative defense that the defendant committed the proscribed act or acts under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be, provided nothing contained in this subsection shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime.

"(b) Evidence that the defendant suffered from a mental disease, mental defect or other mental abnormality is admissible, in a prosecution under subsection (a), on the question of whether the defendant acted with intent to cause the death of another person.

"(c) Murder is punishable as a class A felony in accordance with subdivision (2) of section 53a-35a unless it is a capital felony."

[3] "[General Statutes] Sec. 53a-54c. FELONY MURDER. A person is guilty of murder when, acting either alone or with one or more persons, he com-

refused to do so, reasoning that proof beyond a reasonable doubt of *either* alternative would be sufficient to sustain a conviction of murder.

The jury returned a general verdict of guilty. The defendant does not dispute that there was sufficient evidence to convict him of felony murder. He claims, however, that there was insufficient evidence that the defendant intended to kill DiChiara to warrant a jury finding of intentional murder. He argues therefore that there was error because it is impossible to determine from the general verdict which alternative the jury relied upon in finding him guilty and he may have been convicted of intentional murder on insufficient evidence. We agree that it was error for the court to charge as it did but conclude that there was sufficient evidence to support a verdict of guilty of each alternative.

"Where a person may have been convicted under more than one statutory alternative, the judgment cannot be supported unless the evidence was sufficient to establish guilt under each statutory provision which the trier may have relied upon. *Leary* v. *United States,* 395 U.S. 6, 31–32, 89 S. Ct. 1532, 23 L. Ed. 2d 57

mits or attempts to commit robbery, burglary, kidnapping, sexual assault in the first degree, sexual assault in the first degree with a firearm, sexual assault in the third degree, sexual assault in the third degree with a firearm, escape in the first degree, or escape in the second degree and, in the course of and in furtherance of such crime or of flight therefrom, he, or another participant, if any, causes the death of a person other than one of the participants, except that in any prosecution under this section, in which the defendant was not the only participant in the underlying crime, it shall be an affirmative defense that the defendant: (A) Did not commit the homicidal act or in any way solicit, request, command, importune, cause or aid the commission thereof; and (B) was not armed with a deadly weapon, or any dangerous instrument; and (C) had no reasonable ground to believe that any other participant was armed with such a weapon or instrument; and (D) had no reasonable ground to believe that any other participant intended to engage in conduct likely to result in death or serious physical injury."

(1969); *Yates* v. *United States,* 354 U.S. 298, 312, 77 S. Ct. 1064, 1 L. Ed. 2d 1356 (1957)." *State* v. *Marino,* 190 Conn. 639, 650–51, 462 A.2d 1021 (1983); *Cramer* v. *United States,* 325 U.S. 1, 36 n.45, 65 S. Ct. 918, 89 L. Ed. 1441 (1945); *State* v. *Thompson,* 197 Conn. 67, 74, 495 A.2d 1054 (1985); *State* v. *Reid,* 193 Conn. 646, 666, 480 A.2d 463 (1984).

A general verdict of guilty to a single count charging alternative methods of committing the same crime may be upheld only if there is sufficient evidence to support the verdict as to each alternative. *United States* v. *Berardi,* 675 F.2d 894, 902 (7th Cir. 1982); *United States* v. *Tarnopol,* 561 F.2d 466, 474 (3d Cir. 1977). "The reason for this rule is that, with the 'one-is-enough' instruction that was given here, it would be impossible to determine whether the jury based its decision on an act for which there was insufficient evidence . . . ." *United States* v. *Berardi,* supra. Since the verdict on the count of murder was a general verdict of guilty without specific findings as to the alternative on which it rested, it must be set aside if the evidence as to either alternative submitted was insufficient. *Cramer* v. *United States,* supra, 34–36; *State* v. *Thompson,* supra; *State* v. *Marino,* supra, 651.

"In determining whether the evidence is sufficient to sustain a verdict, 'the issue is whether the jury could have reasonably concluded, upon the facts established and the reasonable inferences drawn therefrom, that the cumulative effect of the evidence was sufficient to justify the verdict of guilty beyond a reasonable doubt.' " *State* v. *Giguere,* 184 Conn. 400, 402–403, 439 A.2d 1040 (1981).

The defendant argues that the evidence was insufficient to support a conviction of intentional murder because his statements to the police indicate that the initial stab wound he inflicted to the victim's neck was

accidental and was not intended to cause death; that the medical examiner could not determine whether the victim was still alive when she was stabbed in the back; and that there was no reason for the jury to believe his statement that the victim was still breathing when she was stabbed in the back as opposed to his later statement that he did not notice her breathing and "figured" she was already dead. He contends therefore the evidence would not justify a finding beyond a reasonable doubt that the victim was still alive when intentional stab wounds were inflicted rather than already dead from the unintentionally inflicted wound. Obviously, he concludes, he could not be convicted of intending to cause the death of a victim who was already dead.

The defendant's argument is flawed. First, the jury was under no obligation to believe that the initial stab wound was inflicted unintentionally. Second, the autopsy revealed a number of stab wounds unaccounted for by the defendant's statements and the jury could reasonably have believed that at least some were inflicted while the victim was alive. Third, and more importantly, in view of the defendant's claim, a finding that the victim was still alive when she was stabbed in the back and was killed intentionally was justified if the jury could reasonably have believed the defendant's statement that he stabbed the victim while she was still breathing because "[he] knew that she had seen [his] face." The defendant suggests no reason why the jury could not have believed that statement and disbelieved his other versions of what occurred.

The evidence must be given a construction which is most favorable to sustaining the verdict of the jury. *State* v. *Rodriquez,* 200 Conn. 685, 687, 513 A.2d 71 (1986); *State* v. *Avcollie,* 178 Conn. 450, 461, 423 A.2d 118 (1979), cert. denied, 444 U.S. 1015, 100 S. Ct. 667, 62 L. Ed. 2d 645 (1980); *State* v. *Panella,* 168 Conn.

532, 534, 362 A.2d 953 (1975). The jurors were confronted with conflicting evidence and the choice of the more credible evidence was for them to make. *State* v. *Cavallo,* 200 Conn. 664, 673–74, 513 A.2d 646 (1986); *State* v. *Rothenberg,* 195 Conn. 253, 257, 487 A.2d 545 (1985); *State* v. *Avcollie,* supra, 461.

Our review of the record reveals that there was ample evidence for the jury to have found proven beyond a reasonable doubt that the defendant intentionally caused the death of the victim and that he did so in the course of committing a robbery.

## II

The defendant next claims that there was insufficient evidence to find proven beyond a reasonable doubt all three of the alternative statutory methods of committing kidnapping in the first degree which were submitted to the jury and which, under the circumstances of this case, were necessary to support a conviction. The trial court instructed the jury that in order to convict the defendant of kidnapping in the first degree[4] it must find proven beyond a reasonable doubt that he abducted and restrained the victim "with the intent to do *any one of the following* prohibited acts, namely, one, to inflict physical injury upon her, or, two, to violate or abuse her sexually, or, three, to accomplish or advance the commission of a felony." (Emphasis added.)

---

[4] "[General Statutes] Sec. 53a-92. KIDNAPPING IN THE FIRST DEGREE. (a) A person is guilty of kidnapping in the first degree when he abducts another person and when: (1) His intent is to compel a third person to pay or deliver money or property as ransom, or to engage in other particular conduct or to refrain from engaging in particular conduct; or (2) he restrains the person abducted with intent to (A) inflict physical injury upon him or violate or abuse him sexually; or (B) accomplish or advance the commission of a felony; or (C) terrorize him or a third person; or (D) interfere with the performance of a government function.

"(b) Kidnapping in the first degree is punishable as a class A felony."

The defendant requested the trial court to require the jury, if it found him guilty of kidnapping in the first degree, to specify which alternative method or methods of committing the crime it found proven beyond a reasonable doubt. See *State* v. *Duhan,* supra, 354. The trial court refused to give such an instruction based on the identical reasoning it had used in rejecting the request for a similar instruction relating to the first count of murder. It was the trial court's view that proof beyond a reasonable doubt of any one of the alternatives would be sufficient to sustain a conviction of kidnapping in the first degree.

As we held earlier in this opinion, a general verdict of guilty on a single count charging alternative methods of committing the same crime, may be upheld only if there is sufficient evidence to support the verdict as to each alternative charged. *Leary* v. *United States,* supra; *Yates* v. *United States,* supra; *Cramer* v. *United States,* supra; *State* v. *Thompson,* supra; *State* v. *Reid,* supra; *State* v. *Marino,* supra.

The defendant does not contest that there was sufficient evidence for the jury to have found proven beyond a reasonable doubt that he abducted and restrained the victim with the intent to inflict physical injury upon her and to advance the commission of a felony. He argues, however, that there was no evidence presented at trial that "would even suggest the defendant kidnapped the victim with the intent to violate or abuse her sexually" other than his own statements in which he admitted having had sexual relations with the victim after he stabbed her. The claim of the defendant apparently is that there was insufficient evidence of the corpus delicti of the crime of kidnapping with the intent to violate or abuse the victim sexually to allow the statements of the accused to be used by the jury as proof of his guilt. We disagree.

"It is a well-settled general rule that a *naked* extrajudicial confession of guilt by one accused of crime is not sufficient to sustain a conviction when unsupported by *any* corroborative evidence." (Emphasis added.) *State v. Grant,* 177 Conn. 140, 144, 411 A.2d 917 (1979). The confession cannot stand alone but must be accompanied by sufficient evidence of the corpus delicti. *State v. Ruth,* 181 Conn. 187, 198, 435 A.2d 3 (1980). "[T]he corpus delicti consists of the occurrence of the specific kind of loss or injury embraced in the crime charged." *State v. Tillman,* 152 Conn. 15, 20, 202 A.2d 494 (1964). There must be facts aliunde of the confession which tend to establish the corpus delicti. *State v. Grant,* supra. Evidence of the corpus delicti may be circumstantial in nature. *State v. Tillman,* supra.

We need not decide whether under our definition of the corpus delicti as "the specific kind of loss or injury embraced in the crime charged"; *State v. Tillman,* supra; it would have been necessary for the state to prove by evidence extrinsic to the confession any element of the crime other than the kidnapping itself. There was, in any case, sufficient evidence of the mental element of the intent to violate or abuse the victim sexually to justify the use of the defendant's confession. It is true that, because of the decomposed condition of DiChiara's body, the state was unable to produce any physical evidence that she had been sexually violated or abused. There was, however, substantial independent evidence that the victim had been abducted by the defendant and it was uncontroverted that, when found, her body was nude. It would be a myopic and hypertechnical interpretation of the corpus delicti rule to hold that extrinsic corroborative evidence of that nature was not material and substantial evidence at least tending to prove the existence of the crime charged. *State v. Grant,* supra. It was certainly sufficient "when viewed in connection with the confession

[to] establish the corpus delicti . . . in the mind of the trier beyond a reasonable doubt." *State* v. *Ruth*, supra, 198; *State* v. *Pena*, 1 Conn. App. 344, 348, 471 A.2d 972 (1984).

The avowed purpose and the reason for the existence of the rule that an accused may not be convicted on his own uncorroborated confession is to protect against conviction of offenses that have not, in fact, occurred, in other words, to prevent errors in convictions based solely upon untrue confessions to nonexistent crimes. *State* v. *Geltzeiler*, 101 N.J.L. 415, 416, 128 A. 240 (1925); *State* v. *Parker*, 315 N.C. 222, 337 S.E.2d 487 (1985); note, "Confession Corroborative in New York: A Replacement for the Corpus Delicti Rule," 46 Fordham L. Rev. 1205, 1207 (1978). In this case there was sufficient extrinsic evidence of the corpus delicti to satisfy fully the purpose behind the rule. The corroborative evidence was sufficient to allow the defendant's statements to be used in determining his guilt and that evidence, when considered with his statements, was sufficient to sustain his conviction of the alternative charge of kidnapping with intent to violate or abuse the victim sexually.

In a related claim, the defendant argues that those segments of his statements concerning sexual intercourse should not have been considered by the jury in determining his guilt of the charge of kidnapping in the first degree because the trial court ruled at one time during the course of the trial that the reference to sexual intercourse contained in one of the defendant's statements was not relevant to any count of the information. This claim is without merit. It is obvious from the record that, contrary to what the trial court said at the point in the trial alluded to by the defendant, its ruling applied only to the capital felony count of the information. That was made abundantly clear to counsel and the jury was explicitly and correctly instructed

that it could consider the defendant's statements relative to his having had sexual intercourse with the victim in determining his guilt or innocence of the kidnapping count. In determining the adequacy of jury instructions, the court's instructions to the jury should be considered as a whole, not critically dissected in a search for inexact or inadvertent statements. *State* v. *Brown,* 199 Conn. 14, 27, 505 A.2d 690 (1986).

### III

The defendant's final claim is that there was insufficient evidence to warrant a finding that he was guilty of having committed a capital felony. The defendant was charged in the third count of the information with having committed a capital felony by murdering a kidnapped person.[5] The trial court instructed the jury that the element of murder, necessary to a finding of guilty of having committed a capital felony, could be satisfied, if, in the first count of the information, they found the defendant guilty of either intentional murder or felony murder. The defendant's only argument, with regard to this third count of the information, echoes his argument with regard to the first count. He claims that, because there was insufficient evidence of intentional murder to sustain a conviction, the defendant was therefore improperly convicted of murder and improperly convicted of having committed a capital felony. For the reasons previously articulated, we disagree.

There is no error.

In this opinion the other justices concurred.

---

[5] "[General Statutes] Sec. 53a-54b. CAPITAL FELONY DEFINED. A person is guilty of a capital felony who is convicted of any of the following . . . (5) murder by a kidnapper of a kidnapped person during the course of the kidnapping or before such person is able to return or be returned to safety . . . ."