# STATE OF CONNECTICUT *v.* JEFFREY GASTON
## (AC 23088)

Lavery, C. J., and Dranginis and Bishop, Js.

Argued January 8—officially released March, 23, 2004

*Dennis P. McDonough*, special public defender, for the appellant (defendant).

*Bruce R. Lockwood*, assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *John F. Fahey*, assistant state's attorney, for the appellee (state).

*Opinion*

DRANGINIS, J. The issue in this appeal is whether, under the circumstances of this case, the trial court properly denied the defendant's motion to suppress evidence found in his vehicle following an investigative or *Terry* stop. See *Terry* v. *Ohio*, 392 U.S. 1, 21–22, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

The defendant, Jeffrey Gaston, appeals from the judgment of conviction, rendered following a trial to the court, of having a weapon in a motor vehicle in violation of General Statutes § 29-38 (a).[1] He claims that the court denied his motion to suppress in violation of his state and federal rights against unreasonable searches and seizures because the "anonymous tip" that had been given to the police did not provide them with a reasonable and articulable basis to suspect that he had committed or was about to commit a crime. We disagree and affirm the judgment of the trial court.

The following facts are relevant to our resolution of the defendant's appeal. On September 12, 1997, at approximately 12:30 a.m., William Mooney, a Hartford police officer on routine patrol in the north end of Hartford, encountered the defendant having a heated argument with another individual. Mooney, who was in full uniform, exited his marked Hartford police cruiser, and approached the defendant and the other individual to investigate. The defendant informed Mooney that the

---

[1] The defendant does not challenge his conviction of three counts of failure to appear in the first degree in violation of General Statutes § 53a-172 (a) (1).

other individual, who was walking away from the scene as the defendant and Mooney spoke, had tried to jump him. When Mooney went to detain the other individual, the defendant got into a blue Honda and drove away.[2] The other individual was not identified in the police report and was unknown to Mooney at trial.

After the defendant drove away, the other individual informed Mooney that the defendant had waved a knife at him. In response to that comment, Mooney broadcasted over the police radio a description of the defendant and his vehicle, his direction of travel and that he might have a knife. Shortly after the radio transmission regarding the defendant, Shawn St. John, a Hartford police officer on routine patrol in the north end of the city, saw a vehicle and driver matching the description in the broadcast. St. John stopped the vehicle approximately seven blocks from the scene of the heated argument. St. John subsequently secured the defendant in the backseat of his police cruiser and searched the passenger compartment of the defendant's vehicle for weapons.

St. John recovered the knife from within arm's length of the driver's seat in an unconcealed portion of the vehicle's passenger compartment. The knife had an edge that was approximately seven and one-half inches in length. After the knife was recovered, Mooney arrived and St. John gave Mooney custody of the knife and the defendant. At that point, Mooney arrested the defendant.

The state charged the defendant with "knowingly" having a weapon in a motor vehicle in violation of

---

[2] Mooney testified at trial that although he did not let the defendant leave the scene of the heated argument, the defendant was free to go. Mooney testified that at the time the defendant left the scene, however, he was investigating him and the other individual in the encounter in connection with breach of the peace in violation of General Statutes (Rev. to 1997) § 53a-181.

§ 29-38 (a). The defendant thereafter filed a motion to suppress the seized weapon on the ground that the police did not have a reasonable and articulable suspicion of criminal activity to conduct a valid *Terry* stop. Specifically, the defendant claimed that St. John lacked a reasonable and articulable suspicion because St. John neither corroborated the information he received over the broadcast nor had any information that would lead him to believe the defendant was dangerous.

He also claimed that the stop was constitutionally unreasonable because Mooney's conversation with the individual regarding the defendant's having waved a knife was similar to that of an anonymous tip. The tip, the defendant contends, was not sufficiently corroborated and lacked the sufficient indicia of reliability to provide a reasonable and articulable suspicion to make a *Terry* stop.[3] Following an evidentiary hearing, the court denied the defendant's motion to suppress, concluding that the police had had a reasonable and articulable suspicion to warrant the search of the vehicle. On appeal, the defendant claims that the court improperly denied his motion to suppress evidence for the same reasons he asserted at trial. We are not persuaded.

"On appeal, we apply a familiar standard of review to a trial court's findings and conclusions in connection with a motion to suppress. A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record . . . . The

[3] In his brief, the defendant relies on *Florida* v. *J. L.*, 529 U.S. 266, 120 S. Ct. 1375, 146 L. Ed. 2d 254 (2000). We are not persuaded that *Florida* is factually similar to the present case. In *Florida*, an anonymous caller reported to the police that a young male standing at a particular bus stop and wearing a plaid shirt was carrying a gun. Here, the officer came to the scene of an argument and had a face-to-face conversation with the complainant. The conversation provided the officer with the opportunity to assess the credibility of the complaint and to make an immediate broadcast that led to the stop of the defendant's vehicle seven blocks from the scene. See *State* v. *Hammond*, 257 Conn. 610, 622, 778 A.2d 108 (2001).

conclusions drawn by the trial court will be upheld unless they are legally and logically inconsistent with the evidence. . . . [W]e engage in a careful examination of the record to ensure that the court's decision was supported by substantial evidence. . . . We give great deference to the findings of the trial court because it weighs the evidence before it and assesses the credibility of witnesses." (Citations omitted; internal quotation marks omitted.) *State* v. *Nieves*, 65 Conn. App. 212, 216, 782 A.2d 203 (2001).

The federal and state law of search and seizure in this area is well settled. "Under the fourth amendment to the United States constitution and article first, [§ 7] . . . of our state constitution, a police officer is permitted in appropriate circumstances and in an appropriate manner to detain an individual for investigative purposes if the officer believes, based on a reasonable and articulable suspicion that the individual is engaged in criminal activity, even if there is no probable cause to make an arrest." (Internal quotation marks omitted.) *State* v. *Santos*, 267 Conn. 495, 504–505, 838 A.2d 981 (2004).

When a reasonable and articulable suspicion exists, the detaining officer may conduct an investigative stop of the suspect to confirm or to dispel his suspicions. *Terry* v. *Ohio,* supra, 392 U.S. 24; *State* v. *Federici*, 179 Conn. 46, 51, 425 A.2d 916 (1979); *State* v. *Acklin*, 171 Conn. 105, 112, 368 A.2d 212 (1976). During a *Terry* stop, an officer may search the automobile's passenger compartment for weapons, limited to areas where the weapon might be hidden, if he or she reasonably believes the suspect is potentially dangerous. *Michigan* v. *Long*, 463 U.S. 1032, 1049, 103 S. Ct. 3469, 77 L. Ed. 2d 1201 (1983).

"What constitutes a reasonable and articulable suspicion depends on the totality of the circumstances. . . .

The determination of whether a specific set of circumstances provides a police officer with a reasonable and articulable suspicion of criminal activity is a question of fact for the trial court and is subject to limited appellate review." (Citations omitted.) *State* v. *Anderson*, 24 Conn. App. 438, 441–42, 589 A.2d 372, cert. denied, 219 Conn. 903, 593 A.2d 130 (1991). An appeal challenging the factual basis of a court's decision that a reasonable and articulable suspicion exists requires that we determine, in light of the record taken as a whole, "(1) whether the underlying factual findings of the trial court are clearly erroneous; and (2) whether the [court's] conclusion that those facts gave rise to such a suspicion is legally correct." (Internal quotation marks omitted.) *State* v. *Santos*, supra, 267 Conn. 504.

In reviewing St. John's actions, we must determine whether the stop was justified at its inception and whether his ensuing response was "reasonably related in scope to the circumstances which justified the interference in the first place." *Terry* v. *Ohio*, supra, 392 U.S. 20. "One function of a constitutionally permissible *Terry* stop is to maintain the status quo for a brief period of time to enable the police to investigate a suspected crime. A police officer who has proper grounds for stopping a suspect has constitutional permission to immobilize the suspect briefly . . . so long as [the officer's] conduct is strictly tied to and justified by the circumstances which rendered its initiation permissible. . . . Determination of the means that are reasonably necessary to maintain the status quo necessarily depends upon a fact-bound examination of the particular circumstances of the particular governmental intrusion on the personal security of a suspect." (Citations omitted; internal quotation marks omitted.) *State* v. *Braxton*, 196 Conn. 685, 689, 495 A.2d 273 (1985); see also *State* v. *Casey*, 45 Conn. App. 32, 41, 692 A.2d 1312, cert. denied, 241 Conn. 924, 697 A.2d

360 (1997). That analysis requires our examination of the facts available to the police officers and any rational inferences derived therefrom. See *Terry* v. *Ohio*, supra, 21.

In denying the defendant's motion to suppress, the court found that the stop was not based on an anonymous tip because Mooney had had a face-to-face conversation with the other individual. That conversation gave Mooney the opportunity to assess the credibility of the complaint that the individual made regarding the defendant's waving a knife in violation of General Statutes (Rev. to 1997) § 53a-181. We agree with the court's conclusion.

When an officer is given a tip in a face-to-face conversation with an informant, the officer has an opportunity to assess the informant's credibility and demeanor. *State* v. *Hammond*, 257 Conn. 610, 622, 778 A.2d 108 (2001), citing *United* v. *Salazar*, 945 F.2d 47, 50–51 (2d Cir. 1991) ("face-to-face informant must, as a general matter, be thought more reliable than an anonymous telephone tipster, for the former runs the greater risk that he may be held accountable if his information proves false"), cert. denied, 504 U.S. 923, 112 S. Ct. 1975, 118 L. Ed. 2d 574 (1992); *United States* v. *Sierra-Hernandez*, 581 F.2d 760, 763 (9th Cir.) ("[A]lthough the informant did not identify himself by name, he would have been available for further questioning if the [officer] had judged the procedure appropriate. Unlike a person who makes an anonymous telephone call, this informant confronted the [officer] directly."), cert. denied, 439 U.S. 936, 99 S. Ct. 333, 58 L. Ed. 2d 333 (1978); *United States* v. *Gorin*, 564 F.2d 159, 161 (4th Cir. 1977) ("standards of reliability should not prevent appropriate police action when a victim of a crime immediately has contacted the police"), cert. denied, 434 U.S. 1080, 98 S. Ct. 1276, 55 L. Ed. 2d 788 (1978).

In the present case, the informant specifically told Mooney, face to face, that the defendant had a knife. In addition, apart from the tip, Mooney had reason to suspect the defendant of illegal conduct because Mooney had arrived on the scene of a heated argument and subsequently stopped to investigate in connection with breach of the peace in violation of § 53a-181. During Mooney's investigation, after the defendant claimed that the other party had "jumped" him, the defendant left the scene. Thereafter, Mooney developed information that the defendant may have had a knife. That fact, once broadcast over the police radio, together with a description of the vehicle and the defendant, gave St. John a reasonable suspicion to believe that the defendant might be armed and might have committed a crime.

The court also found that reasonable suspicion was sufficient under *Michigan* v. *Long*, supra, 463 U.S. 1049, to allow St. John to proceed with an investigative stop, to detain the defendant and to search the passenger compartment of the vehicle. For those reasons, the court ruled that the search of the car and the seizure of the knife were proper.

We conclude that the court properly denied the defendant's motion to suppress. As the court noted, Mooney had the opportunity to assess the credibility of the other individual before making the radio broadcast that the defendant may have had a knife. The court credited the testimony of St. John that indicated that he had received Mooney's broadcast containing information that the operator of the vehicle may have had a knife. Moreover, St. John's ability to confirm that the details of the broadcast were accurate provided a reasonable basis to suspect that the defendant, who may have had a knife in his possession, was driving the blue vehicle only seven blocks from the heated argument.[4]

---

[4] "[I]n testing the amount of evidence that supports probable cause, it is not the personal knowledge of the arresting officer, but the collective knowledge of the law enforcement organization at the time of the arrest

To maintain the status quo, it was proper for St. John to detain the defendant while conducting an investigation. See *State* v. *Braxton*, supra, 196 Conn. 689. St. John's safety also was of concern because the defendant was suspected of having a knife. See *State* v. *Wilkins*, 240 Conn. 489, 509, 692 A.2d 1233 (1997) (safety concerns set forth in *Terry* v. *Ohio*, supra, 392 U.S. 27, regarding patdown of person apply for limited weapons search of passenger compartment of lawfully stopped vehicle). Under those circumstances, therefore, the court properly concluded that the police had a reasonable and articulable suspicion before stopping and searching the defendant's vehicle and that they acted in accordance with the principles of a constitutionally permissible *Terry* stop.

The judgment is affirmed.

In this opinion the other judges concurred.

that must be considered." *State* v. *Arline*, 74 Conn. App. 693, 702, 813 A.2d 153, cert. denied, 263 Conn. 907, 819 A.2d 841 (2003), citing *State* v. *Dennis*, 189 Conn. 429, 432, 456 A.2d 333 (1983).

