STATE OF CONNECTICUT *v.* WILLIAM FARNUM
(AC 24025)

Lavery, C. J., and Schaller and Peters, Js.

---

Argued March 30—officially released June 8, 2004

*Joaquina Borges King*, special public defender, for the appellant (defendant).

*Margaret Gaffney Radionovas*, senior assistant state's attorney, with whom, on the brief, were *Scott J. Murphy*, state's attorney, and *Brian W. Preleski*, assistant state's attorney, for the appellee (state).

SCHALLER, J. The defendant, William Farnum, appeals from the judgments of conviction, rendered after a trial to the court, of two counts of robbery in the first degree in violation of General Statutes § 53a-134 (a) (4), one count of larceny in the sixth degree in violation of General Statutes § 53a-125b (a) and one count of larceny in the third degree in violation of General Statutes § 53a-124 (a) (2). On appeal, the defendant claims that the trial court improperly denied (1) his motion to suppress identification evidence obtained as a result of a photographic array because the array was unnecessarily suggestive and (2) his motion for judgments of acquittal because the evidence was not sufficient to establish that he was the perpetrator of the robberies. We conclude that the photographic array was not overly suggestive, but that there was not sufficient evidence to convict the defendant of one of the two bank robberies that he allegedly had committed. Accordingly, we affirm in part and reverse in part the judgments of the trial court.

On January 24, 2002, the Farmington Avenue branch of the American Savings Bank in New Britain was robbed. Agnes Ksiazak, a teller at the bank, was assisting a customer when she noticed that a man cut in line and pushed an older female customer. The man handed Ksiazak a note. The note said to give him all her "fifties, hundreds, twenties, I have a gun." After Ksiazak gave the robber more than $2000, he left the bank.

Ksiazak could not positively identify the robber. She described him "as not black, but having dark skin and big eyes." She worked with the police to create a composite drawing of the robber's face. The female customer also could not identify the robber except that he was "about five feet, five inches, five feet, six inches

and wearing a hood." A second bank teller who had observed the robbery also could not positively identify the robber. The second teller described the robber as a five feet, six inch, five feet, seven inch black male with a medium build. The bank surveillance videotape and a black and white photograph depicted the robber wearing a hat with a brim that covered his eyes. The robber's facial features could not be ascertained from the videotape or photograph.

On February 2, 2002, the defendant and an acquaintance, Antonio Smith, were arrested on unrelated narcotics charges. Smith testified that while in the lockup, the defendant told him that he had committed a robbery in order to pay a debt owed to a man. Smith testified that the defendant told him that he walked in with a note, did not use a gun and obtained approximately $2000. Smith's testimony was given in the hope that it would be taken into consideration in regard to the narcotics charges he was facing.

On January 31, 2002, the Hartford Road branch of the American Savings Bank in New Britain was robbed. Mila Gitelman, an employee of the bank, observed the robber throughout the robbery. Gitelman had received training in detecting potential robbers. She "noticed that [the robber] didn't give [the teller] any cash to get any change in return, so I knew then she was being robbed." Gitelman then activated two silent alarms.

Gitelman described the robber as a black male in his late teens with "a very defined chin and very round." She testified that the robber was wearing a "green camouflage fishing type hat." She also briefly saw the robber's face and eyes. Gitelman immediately identified the defendant as the robber when shown a photographic array by the police. She expressed no doubt about her identification. She also made an in-court identification of the defendant as the robber. No other bank employee

or customer was able to make a positive identification of the robber.

On February 8, 2002, pursuant to a search warrant, the police seized a green camouflage hat with an elastic chin strap from the truck of Smith's girlfriend. Smith and his girlfriend occasionally had given the defendant rides in the truck. Smith identified the hat as belonging to the defendant. The hat's camouflage pattern, style and chin strap matched the hat depicted in a black and white photograph made from the bank's surveillance videotape at the time of the robbery.

I

The defendant first claims that the court improperly denied his motion to suppress the identification of him that was made from the photographic array because the array was unnecessarily suggestive.[1] Specifically, the defendant argues that his photograph stood out because it was darker than the other photographs, some of the individuals depicted had facial hair and the background of his photograph differed from that of all the other photographs in the array.

"On appeal, we apply a familiar standard of review to a trial court's findings and conclusions in connection with a motion to suppress. A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record . . . . The conclusions drawn by the trial court will be upheld unless they are legally and logically inconsistent with the evidence. . . . [W]e engage in a careful examination of the record to ensure that the court's decision was supported by substantial evidence. . . . We give great deference to the findings of the trial court because it weighs the evidence before it and assesses the credi-

[1] We address the suppression claim first because the defendant's sufficiency of the evidence claim is dependent to a large extent on our determination of the suppression claim.

bility of witnesses." (Internal quotation marks omitted.) *State* v. *Gaston*, 82 Conn. App. 161, 164–65, 842 A.2d 1171 (2004).

"[I]n determining whether identification procedures violate a defendant's due process rights, the required inquiry is made on an ad hoc basis and is two-pronged: first, it must be determined whether the identification procedure was unnecessarily suggestive, and second, if it is found to be so, it must be determined whether the identification was nevertheless reliable based on an examination of the totality of the circumstances. . . . A defendant who moves to suppress identification evidence bears the initial burden of proving that the identification resulted from an unconstitutional procedure. To prevail in his claim the defendant must demonstrate that the trial court erred in *both* of its determinations regarding suggestiveness and reliability of identifications in the totality of the circumstances." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Fields*, 31 Conn. App. 312, 320, 624 A.2d 1165, cert. denied, 226 Conn. 916, 628 A.2d 989 (1993).

In this case, the court found that "[t]he defendant is correct that the background of his photograph is darker and, in fact, the entire photograph appears darker than the other seven photographs. The court does not find, however, that the defendant's skin tone appears orange. Other photographs in the array have different colored backgrounds. . . . That the photograph of the defendant is darker does not render the entire array unnecessarily suggestive so as to lead to the misidentification of the defendant.

"The physical characteristics of the eight individuals depicted in the photographs are similar so that the defendant's photograph does not jump out at you. The court credits the testimony of Detective Adam Rembisz

[of the New Britain police department] that he did not change the color of the defendant's skin color or the color of the background of the defendant's photograph or otherwise alter any of the photographs.

"Accordingly, the court finds that the photographic array, when viewed in its entirety, is not impermissibly suggestive so as to result in irreparable misidentification of the defendant as the perpetrator of the bank robberies at issue in these consolidated cases."

After a visual review of the photographic array, we agree with the conclusion reached by the court that the array was not impermissibly suggestive. The only noticeable difference among the photographs is the darker color composition of the defendant's photograph. Our Supreme Court has held that a difference in color composition, alone, does not render a photographic array unnecessarily suggestive. *State* v. *Boscarino*, 204 Conn. 714, 727, 529 A.2d 1260 (1987).

Accordingly, we conclude that the court properly denied the defendant's motion to suppress the identification of him that was made from the photographic array.

II

The defendant next claims that the court improperly denied his motion for judgments of acquittal because the evidence was not sufficient to establish that he was the perpetrator of the robberies. We agree that there was not sufficient evidence as to the January 24, 2002 robbery, but disagree that there was not sufficient evidence to prove that he was the perpetrator of the January 31, 2002 robbery.

"The standard of review we apply to a claim of insufficient evidence is well established. In reviewing the sufficiency of the evidence to support a criminal conviction we apply a two-part test. First, we construe the evidence

in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . .

"While the [finder of fact] must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the [finder of fact] to conclude that a basic fact or an inferred fact is true, the [finder of fact] is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt." (Citation omitted; internal quotation marks omitted.) *State* v. *Gombert*, 80 Conn. App. 477, 494–95, 836 A.2d 437, cert. denied, 267 Conn. 915, 841 A.2d 220 (2004).

A

The defendant claims that the evidence was insufficient to establish that he was the person who committed the January 24, 2002 robbery. We agree.

The state argues that the court reasonably could have found the defendant guilty of that robbery on the basis of eyewitness descriptions, the bank surveillance videotape and photograph, Smith's testimony that the defendant admitted committing a robbery and evidence concerning the January 31 robbery establishing the defendant's identity. We are not persuaded.

Our review of the evidence before the court indicates that no witness was able to offer a positive identification

of the defendant as the person who committed the January 24 robbery. The bank surveillance videotape and photograph were inconclusive. Although the state argues that the witnesses' descriptions of the robber were "consistent with the defendant's physical appearance," we note that, in fact, the witnesses' descriptions were not consistent in identifying the robber's skin color and, in other respects, were little more than general descriptions of dark skinned males of medium height. Even if the court credited the testimony of Smith, who testified in the expectation of leniency as to the narcotics charges that he faced, the statements that he attributed to the defendant referred to "a bank robbery in which he took about $2000" without identifying a specific date or location with any degree of particularity. Although the amount obtained in the January 24 robbery was $2310, it was not clear to which robbery he was referring, given the generality of his remarks.

Finally, even if the court considered evidence of similarities in the January 31 robbery as uncharged misconduct evidence that was admissible to show identity, that alone would not be sufficient to prove the identity of the defendant as the person who committed the January 24 robbery.[2] The common factors concerning

---

[2] Although the state did not offer evidence of the January 31 robbery as uncharged misconduct evidence to show identity, "we are mindful of our authority to affirm a judgment of a trial court on a dispositive alternate ground for which there is support in the trial court record." (Internal quotation marks omitted.) *State* v. *Vines*, 71 Conn. App. 359, 366–67, 801 A.2d 918, cert. denied, 261 Conn. 939, 808 A.2d 1134 (2002). The state argues that for the purpose of showing identity with respect to the January 24 robbery, the court could have relied reasonably on the fact that the defendant committed the January 31 robbery. See Conn. Code Evid. § 4-5 (b); *State* v. *Reddick*, 33 Conn. App. 311, 327–29, 635 A.2d 848 (1993), cert. denied, 228 Conn. 924, 638 A.2d 38 (1994).

In a consolidated case, there is a danger that the finder of fact may use evidence of a crime in one case to find guilt of a crime in the other case. That evidence is admissible, however, in a consolidated case if "the evidence admissible in the trial of the charges arising from one incident would likely be admissible in a separate trial of the charges arising from the other incident

the identity of the robber merely were the bank that was robbed and some similarities with respect to the physical appearance of the robbers, as depicted on the bank surveillance videotape and photograph and on a composite drawing.

In sum, apart from the general, vague and conflicting eyewitness testimony, the only evidence presented at trial to prove that the defendant committed the January 24 robbery was the uncharged misconduct evidence and the purported admission to Smith. Neither of those evidentiary offerings was sufficient to establish the defendant's identity beyond a reasonable doubt.

B

The defendant next claims that the evidence was not sufficient to establish that he was the perpetrator of the January 31, 2002 robbery. We disagree.

The state produced sufficient evidence to establish that the defendant was the perpetrator of the January 31, 2002 robbery. The one sole contested fact at trial concerning that robbery was the identification of the robber. Gitelman positively identified the defendant as the robber. Gitelman's photographic and in-court identification alone are sufficient to sustain the defendant's conviction. See *State* v. *Smith*, 57 Conn. App. 290, 297–99, 748 A.2d 883, cert. denied, 253 Conn. 916, 754 A.2d 164 (2000). Further, Gitelman identified the person that

because [e]vidence tending to prove prior criminal conduct which is relevant and material to an element of the crime, identity, malice, motive, or which shows a pattern of criminal activity is admissible if the trial court determines, in the exercise of its sound discretion, that its probative value outweighs its prejudicial impact." (Internal quotation marks omitted.) *State* v. *Walsh*, 52 Conn. App. 708, 713, 728 A.2d 15, cert. denied, 249 Conn. 911, 733 A.2d 233 (1999). Here, even if evidence of the January 31 robbery was admissible as to the January 24 robbery, we have concluded that the common factors concerning the two robberies were not so striking or distinctive that the court would have given great weight, if any, to the tentative connection between the two robberies.

was the robber in the bank surveillance videotape and photograph. The robber's physical appearance in the videotape and photograph was consistent with the defendant's physical characteristics. Finally, the camouflaged hat found in the truck of Smith's girlfriend, which Smith identified as belonging to the defendant, matched the description of the hat worn by the robber. The court reasonably could have concluded that this was the same hat depicted in the bank surveillance film and that Gitelman saw the robber wearing, and, therefore, that the defendant was the robber. Although Gitelman's positive identification alone was sufficient to sustain the conviction, all of the evidence presented at trial was consistent with the defendant's guilt. Accordingly, the court had sufficient evidence to convict the defendant of the January 31, 2002 robbery.

The judgment in the first case (CR02-0200468) is affirmed. The judgment in the second case (CR02-0200469) is reversed and that case is remanded with direction to render judgment of not guilty.

In this opinion the other judges concurred.