## STATE OF CONNECTICUT *v.* WILLIAM FARNUM
### (SC 17254)

Borden, Norcott, Palmer, Vertefeuille and Zarella, Js.

Argued March 8—officially released August 9, 2005

*Margaret Gaffney Radionovas*, senior assistant state's attorney, with whom, on the brief, were *Scott J.*

*Murphy*, state's attorney, and *Brian Preleski*, assistant state's attorney, for the appellant (state).

*Joaquina Borges King*, special public defender, for the appellee (defendant).

*Opinion*

VERTEFEUILLE, J. The state appeals, following our grant of certification to appeal, from the Appellate Court's judgment reversing the conviction of the defendant, William Farnum, on one count of robbery in the first degree and one count of larceny in the third degree. *State* v. *Farnum*, 83 Conn. App. 326, 849 A.2d 393 (2004). The state claims that the Appellate Court improperly concluded that there was insufficient evidence to support the defendant's conviction of those charges. We agree with the state, and, accordingly, we reverse in part the judgment of the Appellate Court.

The following undisputed facts and procedural history are relevant to our resolution of this appeal. On January 24, 2002, a branch of the American Savings Bank, located at 747 Farmington Avenue in New Britain, was robbed. After pushing aside a customer, the robber approached Agnes Ksiazak's teller station. He told her to "make it quick," and handed her a note demanding all of her $20, $50 and $100 bills, and warning that he had a gun. Ksiazak then handed the robber $2310, and he departed.

The following week, on January 31, 2002, a second New Britain branch[1] of the American Savings Bank was robbed. The robber approached Nadine Narog's teller window and gave her a note stating that he had a gun and that he wanted all of her $50 and $100 bills. He told her that she should "make it quick . . . ." Narog then gave the robber $200, and he left the bank.

---

[1] This branch was located at 587 Hartford Road in New Britain.

The defendant subsequently was charged in connection with both robberies. As a result of the January 24 robbery, the defendant was charged in an information with one count of robbery in the first degree in violation of General Statutes § 53a-134 (a) (4) and one count of larceny in the third degree in violation of General Statutes § 53a-124 (a) (2). As a result of the January 31 robbery, the defendant was charged in a second information with one count of robbery in the first degree in violation of § 53a-134 (a) (4) and one count of larceny in the sixth degree in violation of General Statutes § 53a-125b (a). The two cases were later consolidated and tried to the court. This appeal concerns only the charges arising from the January 24 robbery.

At trial, the state called eyewitnesses to both robberies. The witnesses to the January 24 robbery were unable to identify the defendant as the robber, but were able to describe the robber's height and skin color. The state also offered the testimony of Antonio Smith, a friend of the defendant. Smith testified as follows. Between mid-December, 2001, and February, 2002, the defendant visited Smith in New Britain on a number of occasions. In January, 2002, Smith gave the defendant a ride to Hartford and witnessed him being beaten there by several men. The defendant later explained to Smith that the men had beaten him because he owed them money for drugs and that he needed to appease them by paying his debt. To accomplish this, the defendant told Smith that he was planning a bank heist. Smith attempted to talk him out of this, but the defendant responded that his mind was made up; he was going to rob a bank because it was "fast money."

In February, 2002, Smith and the defendant were arrested on an unrelated matter and spent the weekend in jail together. While in jail, the defendant told Smith that he had gone through with a bank robbery at a bank

located near Malikowski Circle[2] in New Britain and that he had stolen about $2000. The defendant told Smith that the robbery was easy, as he just went into the bank with a note. Prior to the confession, Smith had noticed that the defendant had ample cash with him, an unusual situation for the defendant. At the close of the state's case, the defendant made a motion for judgments of acquittal, claiming that the evidence was not sufficient to establish that he was the perpetrator of the robberies. The trial court denied the motion.

After the conclusion of the evidence, the trial court found the following facts on the record with regard to the January 24, 2002 robbery. The robber was a short black man, approximately five feet, five inches to five feet, six inches tall, whose height is consistent with that of the defendant, who is five feet, five inches tall. The robber's mouth as depicted in the still photograph produced from the bank's surveillance videotape resembles the defendant's mouth. The trial court further found that it fully credited the testimony of all of the state's witnesses, including Smith. Accordingly, the court found beyond a reasonable doubt that the defendant had committed both robberies and rendered judgments of conviction on all counts.

The defendant appealed from those judgments to the Appellate Court, contending that the trial court improperly had denied his motion for judgments of acquittal because the evidence was insufficient to establish that he was the perpetrator of the robberies.[3] The Appellate Court affirmed the conviction for the January 31 rob-

---

[2] Smith testified that Malikowski Circle is near the Farmington Avenue branch of American Savings Bank.

[3] On appeal, the defendant also claimed that the trial court improperly had denied his motion to suppress identification evidence obtained as a result of a photographic array from the January 31, 2002 robbery because the array was improperly suggestive. The Appellate Court rejected this claim. State v. Farnum, supra, 83 Conn. App. 332.

bery, but reversed the conviction for the January 24 robbery, concluding that the trial court should have granted the defendant's motion for judgment of acquittal as to those charges due to insufficiency of the evidence. *State* v. *Farnum*, supra, 83 Conn. App. 332. The Appellate Court further ordered that the case be remanded with direction to render judgment of not guilty for the January 24 robbery. Id., 336. Thereafter, we granted the state's petition for certification to appeal, limited to the following question: "Did the Appellate Court properly conclude that the evidence was insufficient to prove that the defendant was the perpetrator of a robbery of the Farmington Avenue branch of the American Savings Bank in New Britain on January 24, 2002?" *State* v. *Farnum*, 271 Conn. 912, 859 A.2d 572 (2004). This appeal followed.

The state claims that the Appellate Court improperly concluded that the evidence was insufficient to prove the identity of the defendant as the perpetrator of the January 24, 2002 robbery. Specifically, the state claims that the cumulative effect of the evidence of the defendant's confession to Smith, the defendant's motive to commit the crime, his declared intent to commit the crime, and his physical similarity to the witnesses' descriptions were sufficient to identify the defendant as the robber.[4] The defendant responds that the Appellate Court correctly determined that there was insufficient evidence to prove the defendant was the perpetrator of the January 24 robbery because no witness could positively identify him as the robber, the witnesses'

---

[4] The state also argues that the similarities between the January 24 and January 31 robberies supported the reasonable inference that the same perpetrator committed both robberies. The state did not make this claim at trial, however, and the trial court did not rely on the similarity of the offenses in finding that the defendant had committed both robberies. In light of our conclusion that there was sufficient evidence to affirm the defendant's conviction in the absence of this evidence, we need not address this claim.

descriptions were inconsistent, and Smith's testimony was both self-serving and too general. We agree with the state.

As a preliminary matter, we set forth the applicable standard of review. "In reviewing a sufficiency of the evidence claim, we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [trier of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . In evaluating evidence, the trier of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The trier may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . . This does not require that each subordinate conclusion established by or inferred from the evidence, or even from other inferences, be proved beyond a reasonable doubt . . . because this court has held that a [trier's] factual inferences that support a guilty verdict need only be reasonable. . . .

"[A]s we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the trier, would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [trier's] verdict of guilty. . . . Furthermore, [i]n [our] process of review, it does not diminish the probative force of the evidence that it consists, in whole or in

part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence." (Citations omitted; internal quotation marks omitted.) *State* v. *Padua*, 273 Conn. 138, 146–47, 869 A.2d 192 (2005). With these principles in mind, we turn to the state's claims.

In support of its claim that the Appellate Court improperly concluded that there was insufficient evidence that the defendant was the perpetrator of the January 24, 2002 robbery, the state places substantial reliance on the defendant's confession to Smith of having committed the robbery. "A confession, while it cannot be regarded as the equivalent of direct testimony, is some evidence, circumstantial in its nature, of the truth of the fact contained in it and under the circumstances of a particular case may be sufficient evidence of that fact." 2 B. Holden & J. Daly, Connecticut Evidence (2d Ed. 1988) § 113, p. 1088. Yet, "a naked extrajudicial confession of guilt by one accused of crime is not sufficient to sustain a conviction when unsupported by any corroborative evidence. . . . The confession cannot stand alone but must be accompanied by sufficient evidence of the corpus delicti. . . . [T]he corpus delicti consists of the occurrence of the specific kind of loss or injury embraced in the crime charged." (Citations omitted; internal quotation marks omitted.) *State* v. *Arnold*, 201 Conn. 276, 286, 514 A.2d 330 (1986). Evidence of the corpus delicti must be independent of the confession, although such evidence may be circumstantial in nature. Id. Once independent evidence establishes the existence of the charged crime, "the confession alone may then be used to provide the link between the criminal act and the accused who admits having committed it." *State* v. *Grant*, 177 Conn. 140, 144, 411 A.2d 917 (1979). The purpose of prohibiting

convictions based on a defendant's uncorroborated confession is "to protect against conviction of offenses that have not, in fact, occurred . . . ." *State* v. *Arnold*, supra, 287.

In the present case, it is apparent from the trial court's findings that the court credited Smith's testimony that the defendant confessed to the robbery in question, and, further, that there was sufficient independent evidence of the corpus delicti to sustain the defendant's conviction. The defendant already had confessed to robbing a bank near Malikowski Circle of approximately $2000. Evidence adduced at trial established that the Farmington Avenue branch of the American Savings Bank, which was robbed on January 24, 2002, was located near Malikowski Circle. Moreover, the amount that was taken in the robbery was $2310, close to the $2000 that the defendant confessed to having stolen. The confession was further corroborated through the testimony of Detective Adam Rembisz of the New Britain police department, who testified that the amount taken in the January 24 robbery had never been made public. Only the perpetrator therefore was privy to the amount stolen. Therefore, the defendant's corroborated confession alone was sufficient to sustain the trial court's finding that the defendant had committed the robbery.

The state further claims that the Appellate Court failed to give any weight to the evidence that the defendant not only had a motive to commit the robbery, but also had declared his intention to carry it out. We agree. "Proof of motive can be used to identify the defendant as the perpetrator of a crime." 1 E. Imwinkelried, Uncharged Misconduct Evidence (1999) § 3:15, p. 78; see *State* v. *Ford*, 230 Conn. 686, 695–96, 646 A.2d 147 (1994) (sufficient evidence to identify defendant as perpetrator because, in part, jury reasonably could have inferred that defendant had motive to commit crime).

Further, "[a] declaration indicating a present intention to do a particular act in the immediate future, made in apparent good faith and not for self-serving purposes, is admissible to prove that the act was in fact performed." (Internal quotation marks omitted.) *State* v. *McDowell*, 179 Conn. 121, 125, 425 A.2d 935 (1979).

In the present case, the trial court found that within the same month of the robbery, the defendant expressed a motive to commit the crime: in order to pay the money he owed his attackers. While this motive may not be exclusive to the defendant, it "increases the inference of the defendant's identity" as the person who robbed the bank. 1 E. Imwinkelried, supra, p. 79. The inference drawn from the motive evidence that the defendant committed the robbery is strengthened by the defendant's declaration to Smith that he intended to rob a bank in order to pay his attackers.

The state further contends that the Appellate Court failed to give appropriate weight to the physical similarities between the defendant and the witnesses' description of the robber as found by the trial court. We agree. The trial court found that the defendant admitted to police that he was five feet, five inches tall. The defendant's height is consistent with the identification testimony of the customer the robber pushed aside, who described the robber as being between five feet, five inches and five feet, six inches tall. Another bank teller at the Farmington Avenue branch bank, Kimberly Piatek, also corroborated that description and testified that the robber was between five feet, six inches and five feet, seven inches tall. Ksiazak, the teller who was confronted by and who faced the robber, described the robber as short. In addition, the court found that the still photograph made from the bank's surveillance videotape revealed that the mouth of the robber resembled the defendant's mouth. We conclude, on the basis of all the evidence referenced herein, that the Appellate

Court improperly determined that there was insufficient evidence that the defendant committed the January 24, 2002 robbery.

The defendant claims that the Appellate Court properly determined that the evidence was insufficient to establish that the defendant was the perpetrator of the January 24 robbery because the witnesses inconsistently described the robber's skin color and no witness was able to identify the defendant as the robber. The inconsistency on which the defendant relies is that Piatek described the robber as black with medium skin color, while Ksiazak described the robber as not black, but with dark skin.

We reject the contention that the difference between Piatek's and Ksiazak's description of the robber's skin color is significant. In our review of the evidence to determine its sufficiency, we do not look at the evidence to see whether it supports the defendant's innocence. *State* v. *Padua*, supra, 273 Conn. 147. Instead, our focus is "whether there is a reasonable view of the evidence that supports the [trier's] verdict of guilty." (Internal quotation marks omitted.) Id. In the present case, the witnesses' descriptions of the robber's skin color were not substantially inconsistent. They both described a robber with dark colored skin, which is consistent with the appearance of the defendant, who is black.

In addition, the inability of the witnesses to identify the defendant specifically as the robber is not dispositive of the state's claim. Circumstantial evidence has the same probative force as direct evidence and "[i]t is not one fact, but the cumulative impact of a multitude of facts which establishes guilt . . . ." (Internal quotation marks omitted.) Id.; see also *State* v. *James*, 237 Conn. 390, 438–39, 678 A.2d 1338 (1996) (concluding that confession containing several accurate details of

crime along with other circumstantial evidence was sufficient to identify defendant as perpetrator of crime).

The defendant further contends that the Appellate Court properly determined that Smith's testimony was both self-serving and too vague to identify the defendant as the robber. While Smith admitted that he hoped his testimony would be taken into consideration in connection with his pending drug case, the trial court fully credited his testimony and "[i]t is not our function to determine if the [trier of fact] was correct in its evaluation of the credibility of [the] . . . witnesses." *State* v. *Baldwin*, 224 Conn. 347, 368, 618 A.2d 513 (1993). We also reject the defendant's contention that Smith's testimony was too vague to identify the defendant as the robber because Smith's testimony recounting the defendant's confession described the amount and location of the robbery in sufficient detail to allow for a reasonable inference that the defendant was referring to the January 24, 2002 robbery.[5]

The judgment of the Appellate Court is reversed with respect to the defendant's conviction of one count of robbery in the first degree and one count of larceny in the third degree and the case is remanded to that court

---

[5] The defendant claims that Smith may have acquired knowledge of the specifics of the January 24, 2002 robbery because he had committed the robbery himself. In support of this claim, the defendant cites an apparent confession by Smith during Smith's testimony. When this exchange is viewed in context, however, it is apparent that Smith was relating the words of the defendant and was not suggesting that Smith himself had committed the crime. The exchange was as follows:

"[Assistant State's Attorney]: Okay. Now, when [the defendant] discussed the bank robbery with you, what exactly did he tell you?

"[Smith]: He was looking for a gun. Like I said, I was fresh out of jail so I really didn't know anybody for nothing. I was still scared. I was just still nervous and scared just being out and freedom after doing five years in prison. I didn't know nothing so I couldn't tell him that but, he really pretty much was telling me how it was easy. [He said] I walked in with a note and it was just easy."

with direction to affirm the judgment of the trial court; the judgment is affirmed in all other respects.

In this opinion the other justices concurred.