STATE OF CONNECTICUT *v.* ANTHONY
DEREK STEPHENS
(AC 28626)

Gruendel, Beach and West, Js.

Argued September 18—officially released December 9, 2008

*William B. Westcott*, for the appellant (defendant).

*Rocco A. Chiarenza*, special deputy assistant state's attorney, with whom, on the brief, were *David I. Cohen*, state's attorney, and *David R. Applegate*, deputy assistant state's attorney, for the appellee (state).

*Opinion*

WEST, J. The defendant, Anthony Derek Stephens, appeals from the judgment of conviction, rendered after a jury trial, of assault in the second degree in violation of General Statutes § 53a-60 (a) (1)[1] and risk of injury to a child in violation of General Statutes § 53-21 (a) (1).[2] On appeal, the defendant claims that the trial court improperly denied his motion for a judgment of acquittal because the state failed to introduce sufficient evidence to establish beyond a reasonable doubt that he was the individual who caused the victim's injuries. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. During the summer of 2005, the victim, a five year old boy, attended a city operated weekday camp for children ranging in age from five to thirteen years. The camp was attended daily by approximately 275 children and staffed by trained counselors and junior counselors, who supervised activities for the children, including sports, board games and arts and crafts. The victim attended the camp regularly throughout the summer and usually was dropped off and picked up by the defendant, the live-in boyfriend of the victim's mother.

On July 25, 2005, Dawn West, the camp director, telephoned the victim's mother to discuss the ongoing problem of the victim stealing food from other campers. West offered the victim's mother some strategies to help

---

[1] General Statutes § 53a-60 (a) provides in relevant part: "A person is guilty of assault in the second degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person . . . ."

[2] General Statutes § 53-21 (a) provides in relevant part: "Any person who (1) wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that the life or limb of such child is endangered, the health of such child is likely to be injured or the morals of such child are likely to be impaired, or does any act likely to impair the health or morals of any such child . . . shall be guilty of a class C felony . . . ."

resolve the problem, stressing to her that this behavior could not continue. Later that day, the defendant, in West's presence, confronted the victim about stealing food from other campers, admonishing the victim that "it had better stop." Soon after, at pickup time, a camp counselor observed the defendant head butt the victim, causing the defendant's forehead to strike that of the victim, repeatedly. The defendant then threw the victim roughly into his car and drove away.

On Wednesday morning, July 27, 2005, the defendant dropped the victim off at the camp. The defendant asked another camp counselor if the victim had been behaving. The camp counselor responded that the victim had been behaving himself at camp. The defendant then said to the camp counselor: "See what a little child abuse does." After the defendant left, the victim approached West and pulled up the leg of his shorts and showed her extensive welts, bruises and abrasions on his right thigh. These injuries extended from the middle of the victim's thigh onto his hip and lower torso above his waist. Following protocol, West contacted her supervisor, Laurie Albano, superintendent of recreation services for the city that operated the summer camp, for direction on how to proceed. Upon her arrival at the camp, Albano inspected the victim's wounds and decided that intervention from local law enforcement as well as the department of children and families (department) was required immediately.

Police officers soon arrived and interviewed both West and the victim. They inspected the extent of the victim's injuries and discovered additional abrasions on his neck. After determining that the victim required medical attention, the police, not having adequate safety seating in their vehicles for the victim, called for an ambulance to transport the victim to the local hospital. During the trip to the hospital, the victim told the emergency medical service worker that he had been struck

with a belt that morning. The emergency medical services worker also observed that the injuries on the victim's right thigh "had what appeared to be small belt hole marks." At the hospital, the victim's injuries were assessed by the triage nurse on duty, Carolyn Demillo. Demillo testified that the victim also told her that his injuries were caused by being struck with a belt. She testified that the victim's wounds were consistent with this assertion. She also specified in her testimony that the victim showed objective indications that he had been subjected to physical abuse.

Brett Silver, a physician and expert in emergency medicine, also examined the victim that day at the hospital. He concluded that the victim's injuries were the product of trauma that was inflicted with a man-made object resulting in the linear pattern of bruising, welts and abrasions on the victim's right thigh, right hip, abdomen and torso. Silver testified that although there was no precise way he could date these injuries other than that they had occurred within a few days prior to his examination, the injuries were consistent with having been inflicted that morning.

On the afternoon of July 27, 2005, the police went to the victim's home and found the defendant in the driveway working on an automobile. The defendant was placed under arrest and subsequently was charged by information with one count of assault in the second degree and two counts of risk of injury to a child. On two occasions after his arrest, the defendant accused a child at the camp attended by the victim of causing the injuries to the victim. The first accusation was made to a department social worker assigned to the case and came within days of his arrest. The second accusation was made in October, 2005, to a police officer assigned as a resource officer at the victim's school.

The defendant's trial commenced in December, 2006. At trial, Andrea Asnes, a pediatrician, provided testimony regarding the evaluation, which the department had requested she perform, of the medical and police records, as well as the department's records, pertaining to this case, along with the records of a forensic interview conducted with the victim and the photographs of his injuries. Asnes specializes in the detection, assessment and treatment of suspected child abuse or neglect. Asnes concluded from her evaluation that the victim's injuries were consistent with a forceful beating with a belt and were unlikely to have been inflicted by a child of comparable age, especially in a camp setting. Also, Asnes testified that physical abuse of children at the hands of caretakers who utilize physical punishment can escalate in that a victim of such abuse may suffer more dramatic injuries over time.

The jury found the defendant guilty of assault in the second degree and one count of risk of injury to a child.[3] The defendant was sentenced to a total effective term of seven years incarceration, execution suspended after two years, followed by five years probation with special conditions. This appeal followed. Additional facts will be put forth as necessary.

On appeal, the defendant claims that the court improperly denied his motion for a judgment of acquittal because the state failed to introduce sufficient evidence to establish beyond a reasonable doubt that he was the individual who caused the victim's injuries. In essence, the defendant argues that the evidence marshaled by the state, even when viewed in the light most favorable to sustaining the verdict, proves beyond a reasonable doubt *only* that on July 27, 2005, camp personnel discovered injuries to the victim and that the

---

[3] The defendant was found not guilty of one count of risk of injury to a child.

defendant had taken the victim to camp that morning. We disagree.

"The standard of review employed in a sufficiency of the evidence claim is well settled. [W]e apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [jury] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State v. Green*, 261 Conn. 653, 667, 804 A.2d 810 (2002).

"It is within the province of the jury to draw reasonable and logical inferences from the facts proven. . . . The jury may draw reasonable inferences based on other inferences drawn from the evidence presented. . . . Our review is a fact based inquiry limited to determining whether the inferences drawn by the jury are so unreasonable as to be unjustifiable. . . . It has been repeatedly stated that there is no legal distinction between direct and circumstantial evidence so far as probative force is concerned. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence." (Internal quotation marks omitted.) *State v. Sanchez*, 75 Conn. App. 223, 238–39, 815 A.2d 242, cert. denied, 263 Conn. 914, 821 A.2d 769 (2003).

"[T]he inquiry into whether the record evidence would support a finding of guilt beyond a reasonable doubt does not require a court to ask itself whether it believes that the evidence . . . established guilt beyond a reasonable doubt. . . . Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. . . . We do not

sit as a [seventh] juror who may cast a vote against the verdict based upon our feeling that some doubt of guilt is shown by the cold printed record." (Internal quotation marks omitted.) *State* v. *Davis*, 68 Conn. App. 794, 798, 793 A.2d 1151, cert. denied, 260 Conn. 920, 797 A.2d 518 (2002).

"It is black letter law that in any criminal prosecution, the state bears the burden of proving beyond a reasonable doubt the defendant's identity as . . . the [perpetrator] of the crime charged." *State* v. *Smith*, 280 Conn. 285, 302, 907 A.2d 73 (2006). Furthermore, "[i]n our review of the evidence to determine its sufficiency, we do not look at the evidence to see whether it supports the defendant's innocence. . . . Instead, our focus is whether there is a reasonable view of the evidence that supports the [trier's] verdict of guilty." (Citation omitted; internal quotation marks omitted.) *State* v. *Farnum*, 275 Conn. 26, 36, 878 A.2d 1095 (2005). On the basis of our review of the record, we conclude that sufficient evidence existed from which the jury could find beyond a reasonable doubt that the defendant caused the victim's injuries.

The jury reasonably could have concluded from the evidence that the defendant resided with the victim and, coupled with the fact that the defendant took the victim to camp on the morning of July 27, 2005, that he and the victim were at home together that morning. Supporting this conclusion is evidence that the victim's mother worked as a patient care technician in a hospital through the entire night before the injuries were discovered until 7:19 a.m. on the morning of July 27, 2005. Furthermore, on that morning the defendant stated to a camp counselor, in response to a report that the victim's behavior had improved, "[s]ee what a little child abuse does." In light of the expert testimony that the victim's injuries were consistent with a forceful beating with a belt that occurred that morning, the jury reasonably

could have concluded that the defendant's statement made to the camp counselor was an admission that the defendant had abused the victim to improve his behavior. Also, there was expert testimony concerning the severity of the victim's injuries that contradicts the accusations of the defendant that a child at the camp had inflicted the injuries on the victim. The jury reasonably could have concluded from this testimony that the defendant's unsolicited accusations made to the authorities were lies made in an attempt to cover up his crimes.

"We note that the jury must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, [but] each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . *If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt.*" (Emphasis added; internal quotation marks omitted.) *State* v. *Martin,* 285 Conn. 135, 147–48, 939 A.2d 524, cert. denied, 555 U.S. 859 129 S. Ct. 133, 172 L. Ed. 2d 101, after remand, 110 Conn. App. 171, 954 A.2d 256, cert. granted, 289 Conn. 944, 959 A.2d 1010 (2008).

After careful review of the cumulative evidence adduced at trial and viewing that evidence in the light most favorable to sustaining the verdict, we conclude that there was sufficient circumstantial evidence for the jury to find, beyond a reasonable doubt, that the defendant was the individual who caused the victim's injuries. We therefore conclude that the defendant's claim has no merit.

The judgment is affirmed.

In this opinion the other judges concurred.